Hillsborough, }
　Dec., 1897. }

## ALLEN v. BOSTON & MAINE RAILROAD.

A railroad company is not liable for injuries to a freight brakeman by an overhead bridge, on the ground of negligence in failing to maintain a bridge guard, when it appears that the plaintiff was performing in the ordinary way a service with which he was familiar, was aware of the existence and dangerous character of the bridge, and would have learned of the absence of a guard by the exercise of ordinary care.

CASE, for damages occasioned to the plaintiff, while in the defendants' employ as a brakeman, by a collision with an overhead highway bridge in Massachusetts. At the close of the evidence upon a trial by jury, a verdict in favor of the defendants was ordered, subject to the plaintiff's exception.

*George B. French* and *Burnham, Brown & Warren*, for the plaintiff.

*Oliver E. Branch, Charles H. Burns*, and *William H. Sawyer*, for the defendants.

CHASE, J. The Massachusetts decisions upon the question before the court are the same in effect as those of this state, namely, that a servant assumes the perils incident to his service, of which he is informed or which ordinary care would disclose to him. *Lovejoy* v. *Railroad*, 125 Mass. 79, 82; *Goodnow* v. *Mills*, 146 Mass. 261, 267; *Scanlon* v. *Railroad*, 147 Mass. 484, 487; *Myers* v. *Company*, 150 Mass. 125, 134; *Lothrop* v. *Railroad*, 150 Mass. 423, 424; *Gleason* v. *Railroad*, 159 Mass. 68; *Goldthwait* v. *Railway*, 160 Mass. 554; *Goodes* v. *Railroad*, 162 Mass. 287; *Fifield* v. *Railroad*, 42 N. H. 225, 240; *Henderson* v. *Williams*, 66 N. H. 405; *Hardy* v. *Railroad*, 68 N. H. 523. It is therefore unnecessary to consider whether the case is governed by the law of that state or of this.

The plaintiff was a servant of the defendants. He was twenty-eight years old and had no physical disability. He had worked upon railroads four years or more, — one year in a yard assisting in making up trains, and the rest of the time as a brakeman upon freight trains. He was familiar with the dangers incident to such service, including that arising from the existence of low bridges upon the road. He understood the office of bridge guards or telltales. In the course of his experience he had frequently been warned of his nearness to a dangerous bridge by such devices. He supposed low bridges generally had guards near them. July 22, 1895, he was assigned to a local freight train running between Nashua and Boston, for the purpose of learning the road with a view of becoming a brakeman on that line. He had never worked there before. He was told that there were low bridges upon the road and that he must look out for them. The road has two tracks, the westerly one being used by trains passing from Nashua to Boston, and the easterly one, by trains passing in the opposite direction. Near the South Wilmington station in Massachusetts there is a highway bridge, sixteen feet wide, resting upon abutments twenty-five feet apart and fifteen feet five inches above the tracks. It is painted white, and there is nothing to obstruct its view from one approaching it on the railroad from either direction. The only tracks under the bridge are the main tracks. A track extending from one main track to the other starts in a southerly direction at a point 239 feet southerly of the bridge. There is a side track on the easterly side of the line, which is connected with the easterly main track a short distance southerly of the same point. There is a suitable telltale over the westerly main track ninety-nine feet northerly of the northerly side of the bridge, and a like telltale over the easterly main track at the same distance from the south side of

the bridge. There is no telltale over the westerly track on the south side, or over the easterly track on the north side. The plaintiff did nothing on the first day at this place that specially directed his attention to these facts. On the trip toward Boston the second day, the train was divided near the northerly side of the bridge for the purpose of taking some cars into the train, that were standing on the side track. Several of the rear cars were left on the westerly track, some extending under the bridge. The locomotive with three to five cars attached went to a point southerly of the cross-over track, backed over that track on to the easterly main track, went southerly on the latter track to a point near the southerly end of a string of cars standing on the side track, and pushed those cars out on to the easterly main track by placing a stake between the southerly end of the most southerly one and the northerly end of the most northerly car attached to the locomotive, and backing. Sufficient momentum was thus given to the cars to send them to a point 50 to 150 feet northerly of the bridge. A part of the cars attached to the locomotive were then thrown on to the side track by a flying switch, and were left there. The plaintiff assisted about this work and in doing so passed under the bridge twice, standing on the top of a freight car, once from north to south on the westerly track and once in the opposite direction on the easterly track, and stooped each time to avoid a collision with the bridge. In a statement made October 17, 1895, he said: " This bridge was so low that I had to stoop very low in going down. Had I been on a beef car, I should have got on to another car, or got down between the cars. I should not feel safe on top of a beef car going under this bridge, even if I was lying down." After putting the cars on the side track, the locomotive with one or more cars attached backed up on the easterly track to get the cars that had been taken from the side track. The plaintiff walked up, and when the cars came together made the hitch between them and gave the engineer the signal to go ahead. He testified that when he gave the signal he would naturally be looking toward the engineer. He further testified that he did not see the bridge then, nor when he passed under it. As the train started he climbed upon one of the cars between which he had made the hitch, and while walking toward the rear end was hit by the bridge and injured. All this took place near one o'clock in the afternoon of a sunshiny day.

The only fault the plaintiff attributes to the defendants is the omission to maintain a telltale over the easterly track on the northerly side of the bridge; and the question is whether his injury can be fairly assigned to that circumstance. He had acquired knowledge of the existence of the bridge and of its dangerous character within a few minutes of the time he was hit by it.

In the words of his counsel, " So far as the bridge itself was concerned, he was ignorant of no fact material to his safety." He had learned from his previous experience the danger incident to the service of a brakeman from such a structure. When he climbed upon the car he knew that he was near the bridge. He testified on direct examination that the head end of this string of cars was a couple of cars' lengths above the bridge; and upon cross-examination, that it was two or three cars' lengths above — as much as fifty feet and he couldn't say whether as much as sixty feet. He had passed under the bridge a moment before. It was a large, white structure that stood out prominently above the road. A person passing under it or facing it could not fail to see it unless he closed his eyes. Assuming that the plaintiff supposed there was a telltale over the easterly track on the north side of the bridge, he must have known that it would furnish him no protection if he was between it and the bridge. He ascended the car so near the place where the telltale would ordinarily be, that it was his duty to use his eyesight to ascertain whether he was inside or outside its location. *Hardy* v. *Railroad*, 68 N. H. 523. The duty was more imperative because of the fact that he was " learning the road," and this was his first experience at that place. If he had been familiar with the surrounding objects, he might have learned of his position in relation to the bridge from them ; but as it was, he was obliged to rely upon seeing the telltale or the bridge for this purpose. His attention was not diverted by the sudden interposition of any unforeseen occurrence or condition. He was performing a service with which he was familiar, in the ordinary way. The fact that he was working on a road with which he had no acquaintance would naturally excite mental alertness. If he had looked for a telltale, he would necessarily have learned that there was none. It follows that if, in fact, he did not know that there was none, it was because he did not do his duty. As was said in *Goldthwait* v. *Railway*, 160 Mass. 554, " If it be assumed in favor of the plaintiff that he had no actual knowledge of the danger, yet its character and the circumstances bearing upon the question were, upon the undisputed evidence, such as to show that he ought to have known and appreciated it." See, also, *Bell* v. *Railroad*, 168 Mass. 443.

The only conclusion fairly deducible from the facts is that the plaintiff's injury was due to a peril incident to his service of which, it must be presumed under the circumstances, he was informed, namely : The peril incident to being upon the top of freight cars about to pass under a low bridge not guarded by a telltale.

*Exception overruled.*

PARSONS, J., did not sit : the others concurred.