Coös,
    Dec., 1899.

### WHITCHER *v.* BOSTON & MAINE RAILROAD.

In an action against a railroad company for injuries received by an employee, evidence that ties longer than those in general use, the ends of which were more or less uneven and somewhat raised above the surface of the ground, were unnecessarily permitted to remain in position, and that, as a consequence thereof, the plaintiff was injured in alighting from a car, warrants a submission to the jury of the question of the defendants' care in furnishing their servant a reasonably safe place in which to work.

Certain evidence considered sufficient to warrant a submission of the questions whether an alleged defect was the cause of injuries complained of, and whether the plaintiff was chargeable with knowledge of such defect and appreciation of the dangers arising therefrom.

On the question whether the plaintiff, at the time of an accident, stepped upon projecting ties when alighting from a slowly moving car, evidence of subsequent experiments made by him is admissible.

CASE, for injuries to the plaintiff, an employee of the defendants, by their alleged negligence in maintaining unsuitable ties in their yard in Lancaster. Trial by jury. The evidence tended to prove that the plaintiff was thirty-seven years old, and had worked at railroading most of the time since he was seventeen years old, as a trackman, as a shop hand, and as a brakeman and conductor on freight trains running in and through the Lancaster yard.

Prior to October, 1894, there was a switch in that yard near the water tank. In the fall of 1894 the switch was removed, but four of the long ties, which projected about a foot further beyond the rail than those used away from switches, were left in place. These ties were about twenty-four feet from the freight platform. The ends of these ties were more or less uneven and somewhat raised above the surface of the ground, which at that point was level. There was no other hard substance aside from the ties on the ground at that point. These ties were nine feet long, and the end of the longest one extended twenty-nine inches easterly from the outer edge of the easterly rail. A tie eight feet long projects seventeen inches beyond the rail.

The train which the plaintiff had charge of was a freight, but carried passengers. When there were passengers for Lancaster, the train ran past the freight station to the passenger station. One of the plaintiff's duties was to report the train in to the operator at the freight station, and leave his way-bills there. It was his custom to jump from the moving train as it passed the freight station, and attend to his duties there while the brakeman attended to the passengers.

Before its removal, he was familiar with the water-tank switch and its surroundings. He knew, in a general way, that it was removed, but did not remember when, nor that he saw the work while in progress. He frequently passed along the track by those ties, alighted from his train at or near the place where they were, and did more or less work around the freight platform and yard nine times a week. This state of affairs continued until November 24, 1896. It stormed that day, and there were about two inches of wet, sleety snow upon the ground. The train arrived at Lancaster from the north at about dusk, and was going past the freight station at a speed of from four to seven miles an hour. The plaintiff went to the forward platform of the saloon car to get off on the right-hand side, but, finding there were cars upon the

siding, he changed to the left-hand side. Having his way-bills in his left hand, he swung himself to the ground, putting his right foot down first. The instant his foot touched the ground, it went out from under him, and he fell and was injured.

He testified that the forward part of his foot struck the ground first upon some hard, slippery substance. He could not tell what it was, as he made no examination of the spot at that time. He does not know it was a tie. The fall was due to slipping, not tripping. It was his impression that his foot came down near the line formed by the plane of the outer surface of the car, extended to the ground, but he could not say certainly. He also testified that he did not know of the existence of the long ties at the time of the accident, and did not understand there were any away from switches; that he usually got off his train on the right-hand side next the station, and did not think he ever got off on the left-hand side before.

The plaintiff testified, subject to the defendants' exception, that since the injury he had made experiments in stepping from the car when at rest, and found that he could step naturally upon a tie that projected twenty-nine inches from the rail; that he did not think there would be any difficulty in doing so if the car was in motion; and that his understanding at the time of the injury was that, in alighting from the car, he would not step upon eight-feet ties, or upon any ties outside of switches.

There was evidence that the body of the car projected from twenty-two and one half to twenty-four and one half inches beyond the outer edge of the rail, and that the hand-rail on the side of the car extended twenty-seven inches. The evidence tended to show that the defendants' employees, from observations made shortly after the accident, cut a letter W into the rail to mark the place where the plaintiff was injured. Some of the way-bills were found near this point.

One witness testified that the blood arising from the plaintiff's injury was within a space of two or three feet in diameter, situated two or three feet northerly of the long ties; another witness testified that it was at a point about midway between the rails and about over the middle one of the long ties,— he could not say whether opposite the point W or not; and a third witness testified that it was over one of the long ties, but he could not state which, and that it was opposite the point W. The plaintiff's theory at the trial was that he stepped on the bevelled end of the second long tie (counting from the north), and he claimed that the point W was over that tie.

A verdict was directed for the defendants, and the plaintiff excepted.

*James W. Remick* and *William H. Paine*, for the plaintiff.

*Drew, Jordan & Buckley*, for the defendants.

WALLACE, J.   To entitle the plaintiff to have the case submitted to the determination of a jury, it must appear by some substantial evidence (1) that the defendants were negligent; (2) that their negligence caused the injury; (3) that the plaintiff did not know of the defect complained of, and ought not to have known of it and appreciated the danger from it; and (4) that the plaintiff was in the exercise of due care.   If he has failed to sustain any one of these propositions by some substantial evidence, or if the evidence on any one of these propositions is such that fair-minded men can arrive at but one conclusion, and that adverse to him, then the verdict was properly directed for the defendants.

The negligence complained of was, that the defendants maintained on their main line in the Lancaster railroad yard four ties a foot longer than the regulation ones, all slightly above the ground, and extending so far beyond the rail that their ends were directly in the natural line of the feet of the trainmen, who had occasion in the discharge of their duty to jump from, or walk or run beside, freight trains, and that this rendered the place unsafe for them. The long ties were placed there to support certain switch rails, and when these rails were removed the long ties were suffered to remain, although there was no further occasion for the extra length, as it now subserved no useful purpose.   This was the condition at the time of the accident and for some time prior thereto.   The existence of the ties is admitted, but it is claimed that their presence in the yard was not negligence on the part of the defendants.   The defendants were required to furnish to the plaintiff a reasonably safe place in which to perform his duty. They were bound to use reasonable care to see that this place in their yard was in such condition that the plaintiff, who had occasion to use it in the discharge of his duty, could do so with safety, provided that he himself was not negligent.   Whether the place was reasonably safe, or was unreasonably obstructed by the ties, would depend upon their location, their character, the extent and kind of work that the railroad employees were required to perform at this point, and its perils in darkness and storm as well as other times, and whether, considering all the circumstances, the existence of the ties was a source of danger.   We cannot say from the evidence that fair-minded men could draw but one conclusion, and that, that the defendants were not negligent in suffering the ties to remain in the yard in the manner they did.   It was a question of fact for the jury to determine, from the evidence,

whether the existence of the ties in the road-bed at the time and place of the accident constituted a defect, and whether this was due to the negligence of the defendants.

There was evidence that the plaintiff, in getting off the car at the time he was injured, struck his foot on some hard, slippery substance, — he could not tell what, — and that he instantly fell and was injured. There was also evidence that the long ties projected some few inches beyond the outer surface of the car, where he says he put his foot down, and where the foot of a person in alighting from the car would naturally come, and that there was no other hard substance at this point. In addition to this, there was evidence that some of the way-bills which the plaintiff had in his hand when he got off the train were found near the long ties, and that the marks of blood from the plaintiff's injury, which covered the snow for a space of two or three feet in diameter, were over the long ties and opposite the letter W chiseled in the rail to mark the place of the accident by the railroad employees, who observed the place that night and the next morning. This evidence supported the plaintiff's contention that the long ties were the cause of his injury. Whether they did thus cause it was a question of fact. That there was other evidence, as, for example, that some of the marks of the blood were two or three feet northerly of the long ties, which, taken in connection with the momentum of the train, supported the defendants' contention that the plaintiff could not have been injured by the ties, does not deprive the plaintiff of the right to have this question submitted to a jury. The determination of the controverted fact, whether the negligence complained of was the cause of the plaintiff's injury, involved the weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences.

The question whether the plaintiff assumed the risk should have been submitted to the jury, unless the evidence is so definite and convincing that fair-minded men could not arrive at opposite conclusions. *Hardy* v. *Railroad*, 68 N. H. 523. The plaintiff assumed the perils incident to his service, of which he was informed, or which ordinary care would have disclosed to him. *Allen* v. *Railroad*, 69 N. H. 271. He testified that he did not know of the existence of the long ties at the time of the accident, and did not understand that there were any such ties away from switches. On the question of whether he actually knew of the alleged defect, there was evidence for the consideration of a jury. It would be for them to determine whether his evidence in that respect was true or false. Although the plaintiff was a railroad man of long experience, was very frequently in the Lancaster yard shifting cars, and also frequently walked past the place where

the long ties were, yet, considering that he was under no duty to inspect the track or yard to discover defects in them; that his attention had not been called to the long ties since the removal of the switch; that he might presume that the master would, if they were a source of danger, remove them when there was no further occasion for them; that his duties daily took him over many miles of track and through other yards to distract his attention; that at the time of the injury it was dark, that the ground was covered with snow, and that he got off upon the opposite side of the train from what he was accustomed to, it cannot be said that fair-minded men would necessarily come to the conclusion that he must have known of the existence and exact location of the alleged defect, or that he ought to have known of it at that time and under those circumstances. It was a matter in regard to which different conclusions might be reached.

Another question on which there might reasonably be a difference of opinion was whether, if the plaintiff knew of the existence of the ties, he would appreciate the danger from them. The danger complained of was that they protruded beyond the track to such a distance that they came into the line where the feet of an employee, in alighting from a freight car, or walking or running by its side, would naturally come, and were liable to cause him to trip or slip. The knowledge of the existence of the ties might not disclose to the plaintiff that they were of the exact length to bring them in the line of the feet of any one alighting from or moving beside a car, unless some measurement or comparison was made. The plaintiff would not assume the risk of any danger from the long ties from the mere knowledge of their existence unless he appreciated, or ought to have appreciated, they were a source of danger, or unless the danger was so apparent that a man of ordinary prudence would not have incurred the risk under the circumstances. *Demars* v. *Glen Mfg. Co.*, 67 N. H. 404, 406. The servant might not be required to know of the defect, or to appreciate its dangers, when the master would be required to do so, being charged with the duty of inspection and examination.

This case is distinguishable from *Allen* v. *Railroad, supra.* There the employee was injured in broad daylight by an overhead bridge. So far as the bridge itself was concerned, he was ignorant of no fact material to his safety. He had a few minutes before twice passed under the bridge, and stooped each time to avoid being hit by it. So far as the telltale was concerned at the time he was injured, he went upon the top of the car so near the place where the telltale would ordinarily be that it was his duty to use his eyesight to ascertain whether he was inside or outside its location. There it was plain the plaintiff knew and appreciated the danger.

Upon the question of whether the plaintiff in the case at bar assumed the risk, there was a chance for a difference of opinion among reasonable men. It cannot be said as a matter of law, from the evidence, that the plaintiff must have known of the defect complained of, or that he ought to have known of it and appreciated the danger from it. *Demars* v. *Glen Mfg. Co., supra; Brown* v. *Railroad,* 68 N. H. 518.

It was a question for the jury whether the plaintiff was in the exercise of due care. It was for them to determine whether he was guilty of negligence in getting off the car while it was in motion in the manner he did, in the darkness, with the ground covered with snow. The servant must exercise ordinary care to look after his own safety, but the nature of his employment and its requirements are to be considered in estimating this obligation. It cannot be said it conclusively appears that a man of ordinary prudence would not have done what the plaintiff did under the same circumstances, and that he was guilty of negligence. Negligence is to be deduced as an inference of fact from the circumstances disclosed by the testimony; and, unless the conclusion that is to be drawn is certain, it is the judgment and experience of the jury, and not of the court, that is appealed to, to determine this question. *Lyman* v. *Railroad,* 66 N. H. 200; *Demars* v. *Glen Mfg. Co., supra.* The plaintiff was entitled to have the case submitted to the determination of a jury.

The evidence of the plaintiff as to the experiments made by him in stepping from the car since the accident, to determine where his feet would naturally come with reference to the long ties, was properly admitted (*Darling* v. *Westmoreland,* 52 N. H. 404, 405; *Cook* v. *New Durham,* 64 N. H. 419), as was also his evidence of his understanding at the time of the injury that in alighting from a car he would not step upon eight-feet ties, or any ties outside of switches.

*Verdict set aside.*

CHASE, J., did not sit: PEASLEE and YOUNG, JJ., dissented: the others concurred.