Grafton,    }
June 6, 1905. }

## MILLER, *Adm'r*, v. BOSTON & MAINE RAILROAD.

In an action of negligence against an employer, certain evidence deemed
sufficient to warrant a finding that the injuries complained of resulted
from the defendant's failure to give proper instructions concerning a danger
of which the servant had neither actual nor constructive knowledge, and
the risk of which he did not assume.

The circumstances under which an accident happened, considered in connec-
tion with the ordinary habits of mankind and the natural instinct of self-
preservation, may warrant a finding of due care on the part of an injured
person, in the absence of direct evidence disclosing his conduct.

A master's assumption of knowledge on the part of a servant does not excuse
a failure to give proper warning concerning the dangers of the employment.

The fact that a freight brakeman was injured by collision with an overhead
bridge while making his first trip, warrants the inference that he was
ignorant of the danger to which he was exposed.

CASE, for personal injuries resulting in the death of the plain-
tiff's intestate. Trial by jury and verdict for the plaintiff. The
defendants excepted to the denial of their motions for a nonsuit
and the direction of a verdict in their favor, to the exclusion of
certain evidence, to the argument of counsel for the plaintiff, and
to the refusal of the court to give requested instructions. Trans-
ferred from the September term, 1904, of the superior court by
*Pike*, J.

At the time of his injury, which occurred December 22, 1902,
the plaintiff's intestate, Robert A. Miller, was twenty-two years
old. He was a bright, active man, and had been employed by the
defendants for four and a half years. He worked substantially all
of that time as a brakeman on passenger trains, but had rendered
some service as brakeman on an extra freight train running be-
tween Plymouth and Woodsville. On the day of his injury he
was making his first trip in the capacity of rear-end brakeman on
a freight train running between Woodsville and Concord.

The defendants' rules required freight brakemen to be on
top of their trains " when approaching and passing through sta-
tion yards." About sixteen rods north of the Tilton station, and
within the territory where brakemen were required by the rules to
ride on top of the trains, the defendants maintained, or suffered to
be maintained, an overhead bridge of such height that there was
only about four feet of clear space between the bottom of the tim-
bers and the top of a saloon car. About 151 feet north of the
bridge the defendants had erected a bridge guard or telltale, pro-

vided with pendants which extended below the under surface of the lower bridge timbers.

The train on which Miller was employed arrived at Tilton from the north at about eight o'clock in the evening. The night was quite dark. As the train approached the station Miller attempted to go to his post of duty on top of the cars by means of a ladder at the forward end of the saloon car, and in so doing faced the rear end of the train. There was evidence tending to show that he mounted the top of the ladder between the telltale and the bridge, and was struck in the head by the bridge timbers on reaching a position within their plane. The injury consisted of a fracture of the left side of the skull, half an inch above and two inches behind the car, resulting in his death the following day. Soon after the accident a spot the size of a man's hand was discovered, where soot had been knocked from the timbers on the north side of the bridge, the bottom of the spot being about five inches above the bottom of the timber. The telltale and the bridge were the only objects in the vicinity which would strike a person standing on the top of a freight car.

The defendants did not instruct Miller as to the character or location of the bridge, nor warn him that in ascending the ladder at that point he would be subjected to the danger of coming in contact with the bridge. A witness called by the defendants testified that in the summer of 1904 he acted as rear brakeman on a passenger train running through Tilton, upon which Miller worked in a similar capacity two or three years before; that the rear end of the train stood near the telltale in question when a stop was made at Tilton station; and that in the performance of his duties the witness observed the bridge and telltale. Another witness called by the defendants testified that on the day of the accident he warned Miller to look out for low bridges, naming some on the route, but could not state that he mentioned the Tilton bridge.

*Smith & Smith* and *Scott Sloane*, for the plaintiff.

*Frank S. Streeter* and *Batchellor & Mitchell*, for the defendants.

BINGHAM, J. Among the risks which Miller assumed on entering the defendants' service as a freight brakeman were those incident to the performance of his duties, of which he was informed, or would learn in the exercise of ordinary care. *Henderson* v. *Williams*, 66 N. H. 405; *Hardy* v. *Railroad*, 68 N. H. 523; *Allen* v. *Railroad*, 69 N. H. 271; *Whitcher* v. *Railroad*, 70 N. H. 242.

Assuming the truth of the plaintiff's evidence and construing it most favorably for him (*Hardy* v. *Railroad, supra*), it does not

seem to us that it conclusively appears that Miller's death was caused by dangers of which he assumed the risk, within the rule above stated.   The accident occurred at night, on the deceased's first trip over the road as a brakeman on a freight train from Woodsville to Concord.   The rules of the road required him to be on top of his train when approaching and passing through station yards.   As his train approached the Tilton yard, it had become dark.   Miller then took his lantern and proceeded to ascend the ladder at the front end of the saloon car.   In doing so, the jury found, and the evidence warranted their conclusion, that he passed up between a telltale and an overhead bridge that crossed the road in the vicinity of the yard, and, on reaching a position within the plane of the bridge, the lower timbers of which were about four feet above the top of the car, was struck by the bridge in the back of the head, just above the ear, and killed.   He was not informed by the defendants when he entered upon this service of the location and dangerous character of the bridge, or that the performance of his duties while passing through this .yard was attended with special danger.   He had been over the road previously as a brakeman on a passenger train, but his duties while acting in that capacity did not subject him to danger from overhead bridges, or require him to take notice of their particular location or their height.   From this evidence it could be found that a knowledge of the location and height of the Tilton bridge and an appreciation of the danger arising therefrom were essential to his safety in the performance of his duties; that he did not know of the particular location and height of the bridge and appreciate the dangers thereof; that in the exercise of ordinary care, either in his previous employment or that in which he was then engaged, he would not necessarily learn of them and appreciate the dangers; that the defendants were negligent in not informing him; and that his injury was due to their failure in this respect.

Although the burden of proof was upon the plaintiff to show that Miller was in the exercise of due care when he ascended the ladder, and there was no direct evidence disclosing his conduct at that time, nevertheless the exercise of such care could have been found from the circumstantial evidence that was introduced. *Lyman* v. *Railroad*, 66 N. H. 200; *Hutchins* v. *Macomber*, 68 N. H. 473.   And as there was no evidence that Miller was insane, intoxicated, or possessed of suicidal intent, it could be inferred from the ordinary habits and dispositions of prudent men and the instinct of self-preservation, taken in connection with the other circumstantial evidence in the case, that he was in the exercise of due care, and that his attempt to ascend the ladder at this time and place was due solely to his inadequate understanding of the

risk. *Huntress* v. *Railroad,* 66 N. H. 185, 190; *Lyman* v. *Railroad,* 66 N. H. 200, 202; *Murray* v. *Railroad,* 72 N. H. 32, 39.

The exclusion of the defendants' evidence that they assumed Miller knew of the location and height of the bridges on the road and the dangers arising therefrom was not harmful to them. Such an assumption, if proved, would not be a defence to the action. It was the defendants' duty to instruct Miller in regard to these matters, or excuse themselves by proof that he knew of them or represented that he knew of them, and that they relied thereon.

If the report of the railroad commissioners that was offered in evidence related to the telltale under which the car passed before reaching the bridge, the defendants were not harmed by its exclusion, for no claim was made by the plaintiff that the telltale was defective, or that Miller's injury was in any way caused by it. The evidence was not material to any issue in the case and was properly excluded.

It was competent for the plaintiff's counsel to argue from the fact that Miller was killed the first time he went over the route, taken in connection with the other evidence showing the manner in which the accident occurred, that the jury could infer he did not know of the danger to which he was subjected. *Murray* v. *Railroad, supra.*

The sixth and sixteenth requests for instructions were properly denied. They presuppose that there was no evidence from which it could be found that Miller's injury was due to his being struck by the bridge, rather than to his having slipped and fallen, or to some other cause for which the defendants were not responsible. If such had been the situation, the court should have taken the case from the jury (*Deschenes* v. *Railroad,* 69 N. H. 285, 290); but, as we have seen, there was such evidence, and the jury were instructed that the plaintiff could not recover unless Miller's injury was due to his being struck by the bridge. An instruction that they could not find a verdict for the plaintiff upon mere guess or conjecture was unnecessary.

The ninth and tenth requests were given in substance, for the jury were told that to entitle the plaintiff to recover they must find "the sole cause of Miller's injury was the failure of the defendants to use ordinary care to warn him of being struck by the bridge."

The twelfth request stands upon the same ground as the evidence that was excluded relating to the right of the defendants to assume that the deceased knew of the dangerous character of the bridge, and does not require further consideration.

*Exceptions overruled.*

All concurred.