July 25,
  1903.

## OPINION OF THE JUSTICES.

The approval required of the governor and council by section 5, chapter 95, Laws 1903, is limited to the determination of the number of special agents to be appointed by the state board of license commissioners and the amount of their compensation.

*To the Honorable Justices of the Supreme Court:*

The governor and the honorable council desire your opinion upon the following important questions of law arising upon the administration of section 5 of an act entitled "An act to regulate the traffic in intoxicating liquor," approved March 27, 1903. A part of said section reads as follows: "Said board of license commissioners, with the approval of the governor and council, may appoint one or more special agents and fix their compensation." Does this require the approval of the governor and council in the appointment of said special agents, or is the requirement of such

approval confined to fixing the number of said special agents and the amount of their compensation?

Nahum J. Bachelder, *Governor.*

J. Frank Seavey,
Alfred A. Collins,
F. E. Kaley,          } *Councilors.*
S. M. Richards,
A. C. Kennett,

*To His Excellency the Governor, and the Honorable Council:*

The communication submitted by you does not state the occasion for the request made of us; but understanding the question to relate to the duty imposed upon the governor and council by chapter 95, Laws 1903, and assuming that you are now called upon to act thereunder, we respectfully comply with your request, without consideration of the question of our duty to answer abstract questions of law in the absence of definite information establishing the constitutional occasion.

Chapter 95, Laws 1903, " An act to regulate the traffic in intoxicating liquor," reversed the policy of the state upon this subject, which had been followed for nearly fifty years. In the enactment of the law it was foreseen that questions might arise in the practical administration of the new policy which could not be wisely determined in advance. As to many questions, therefore, a broad discretion was vested in the commission provided for in the act. They were authorized to fix the fee for and to restrict, define, and limit each license of the first class (*s.* 7, *cl.* 1), and to prescribe rules for the conduct of the business under licenses of this class (*s.* 28). They were also authorized to determine, within certain limits, the amount of the fee which should be paid for licenses of the sixth, seventh, and eighth classes (*s.* 7), to refuse licenses for the prosecution of the traffic in locations where they considered such business would be detrimental to the public welfare (*s.* 9), and to determine in what cases certain classes of licenses should be issued to be exercised in towns which did not adopt the act (*s.* 31). The board are also required to make investigation by themselves or their agents into any matters in connection with the sale of liquor (*s.* 5), and to make an annual report of the workings of the act and its bearing upon the welfare of the state.

It was obvious when the act was passed that three commissioners could not personally perform all the duties required of the administrators of the act. It was apparent that a clerical force more or less numerous, and sundry deputies or agents, would also be required for the proper administration of the new policy. Because it was then unknown to what extent the law would be

adopted throughout the state, and for other reasons incident to the trial of an entirely new policy, the requisite number of such assistants could not be forecast with certainty, nor their remuneration be fairly determined. No attempt, therefore, was made to provide definitely the number of such assistants, or to fix their compensation. The provisions upon the subject are found in sections 4 and 5 of the act. The question submitted to us relates only to special agents provided for by section 5 ; but the language as to the duty of approval by the governor and council in the employment of clerks in section 4 is practically identical with that relating to the appointment of agents. Both sections relate to the same subject—the securing of assistants to the commission in the administration of their office ; and the similar language must have been understood to have the same meaning in each connection. These provisions are as follows: " Sect. 4. Said board of license commissioners, with the approval of the governor and council, are hereby authorized and empowered to employ such clerks as are, in their opinion, necessary for the proper transaction of the business of their office, and to fix their compensation. Sect. 5. Said board of license commissioners, with the approval of the governor and council, may appoint one or more special agents and fix their compensation. . . . Said special agents may be removed by the board of license commissioners." The question is, whether under these provisions the governor and council, having approved of the employment by the commission of a clerical force at a certain compensation, or having approved of the number of special agents to be appointed and their remuneration, are also required to pass upon the persons selected by the commission as clerks or special agents, and approve or disapprove, as in their judgment such persons are or are not qualified for the positions for which they have been designated.

The construction of a statute, as of any written document, is the ascertainment of the meaning of the language to those using it. The object of a statute is to be regarded, and all the parts brought together to ascertain the meaning. *Stanyan* v. *Peterborough*, 69 N. H. 372, 373 ; *Barker* v. *Warren*, 46 N. H. 124. In the construction of a contract, " the inconvenience, hardship, or absurdity which one construction would lead to is often strong evidence in favor of another or different construction involving no objections of that character, because men in general do not enter freely into contracts which are absurd or frivolous, and therefore the knowledge of the court on that subject is evidence of the intention of the parties." *Kendall* v. *Green*, 67 N. H. 557, 563. So, in the construction of a statute, the probability that the legislature intended a workable law—a method reasonably certain of effecting

the result aimed at—is evidence upon the meaning attached by the legislators to the language used. *Petition M. & M. R. R.*, 68 N. H. 570, 577. For the same reason, if there exists a customary method of performing the matter in question known to the parties, so generally followed that the contrary may fairly be considered unreasonable, it is probable that the language, if doubtful, was intended to mean what common usage has considered reasonable; for the probability that, if a contrary course had been intended, explicit language would have been used to declare such intention, is evidence, in the absence of such language, of the meaning attached to the term employed.

Generally, it may be said to be considered reasonable that one who has to commit a portion of his work to another, for whose performance he is responsible, should have the power of selecting such subordinate. Such has been the practice in this state. When in the judgment of the legislature an officer required a deputy or clerks, such assistants have been provided for, to be employed or appointed by the officer whose work they were to perform, while their remuneration has been fixed by law, or a stated sum allowed for clerical expenses. The appointment of his deputy by the secretary of state is provided for by the constitution (*art.* 68), and his salary is fixed by the statute. P. S., *c.* 286, *s.* 4; Laws 1893, *c.* 1, *s.* 1. The state treasurer appoints his deputy (P. S., *c.* 16, *s.* 15), at a salary fixed by law (P. S., *c.* 286, *s.* 7), and has an allowance for clerical expenses. P. S., *c.* 286, *s.* 6. The bank commissioners are authorized to employ a clerk at a stated salary. Laws 1893, *c.* 3, *s.* 1. The insurance commissioner is authorized to employ such clerks as he may require, at an expense not exceeding a sum stated. P. S., *c.* 167, *s.* 7. The trustees of the state library appoint the librarian and fix his compensation. P. S., *c.* 8, *s.* 4. There is an annual appropriation for clerical service in the adjutant-general's office. P. S., *c.* 286, *s.* 9. The state board of agriculture appoint a secretary at a fixed salary. P. S., *c.* 12, *s.* 3. These are only a few of the instances that might be given. Generally, though not always, the expenditure has been defined or limited; but no case has been found where the appointment of such officers is committed jointly to the governor and council and another body. The detectives appointed by the fish and game commission are perhaps nearest in character to the special agents under consideration. Their appointment is placed with the commission. P. S., *c.* 130, *s.* 8; Laws 1895, *c.* 102, *s.* 1.

Where the amount of the expenditure necessary for any purpose has been uncertain, it has been usual to authorize the supervision of such expenditure by the governor and council. This practice is so common and well known that citation of examples is

uncalled for. In the situation existing at the passage of the act, in view of the broad discretion confided in the commission in other respects and the universal practice in the state, it would naturally be expected that the legislature would authorize the commission to employ such clerical force and other assistants as should be found necessary, and that they would limit the power of incurring expense for this purpose by placing such expenditure under the control of the governor and council. It is, therefore, probable that if the intention had been to place a greater burden upon the governor and council, apt language would have been used to express such intention. If such had been the intention, it would probably have been provided that the commissioners might employ such persons as clerks, or appoint such persons special agents, as should meet the approval of the governor and council; or that the governor and council and the commission should jointly employ the necessary clerks, or together appoint special agents. Such language was not used. The power of employment and appointment was vested with the commission, and not with the governor and council. We think the natural effect of the words used is that the approval of the governor and council is essential to the power of appointing, but does not relate to the manner of its exercise. If there be any doubt in this respect, there can be none as to the legislative intention when the purpose of the appointment and the previous practice in such matters are considered. The clerks and agents provided for in the two sections are confidential employees of the commissioners. For the successful performance of the delicate duties entrusted to the commission, it is necessary that their subordinates should be entirely in harmony with them. To secure such result, the power of selection by the commissioners is essential—a fact recognized by the general practice in like cases. The governor and council have no duties to perform in the administration of the act. No reason is perceived why their approval should have been considered of importance in the matter. The supposition that the legislature, with the broad powers vested in the commission, thought it unsafe to permit them to employ agents or clerks unless the individuals were approved by the highest executive officers in the state, involves an absurdity fatal to the contention. Such a provision might be used to cause the positions, as they became vacant from time to time, to be filled only by members of the party in power, and to hamper the efforts of the commission for an impartial enforcement of the law; but there is no evidence that the legislature had any purpose in view except to provide for the wise administration of the new policy.

It may be contended, from the slight difference in language in the two sections, that the approval of the governor and council in

section 4 was limited to the power to employ, as it is there said that the commission with such approval are "authorized and empowered to employ" clerks, while the language of section 5, that with such approval the commission "may appoint" agents, indicates that the approval extends to the exercise of the power in the latter case. But the point, if made, does not seem well founded. If any doubt could arise from the change in words, such doubt is removed by the express provision that "said special agents may be removed by the board of license commissioners." This power of removal is without limitation, and may therefore be exercised without cause at the pleasure of the commission. The approval of the governor and council is not essential to such action. The failure to give them any control over it is evidence of great weight (which, if there were no other, might well be regarded as conclusive) tending to establish that the legislature understood the individual agents held their positions from the commission, and not from the governor and council. An interpretation of the statute which would give to one party authority to finally determine who should be appointed agents for another party, in the conduct of business over which the former had no control, subject to practical revocation at will by such other, appears so unreasonable and so ill-adapted to effectuate the legislative purpose, and is so contrary to the practice in such matters heretofore, that the conclusion appears inevitable that such was not the legislative intention. Our answer to the question submitted is, that the approval required of the governor and council by section 5, chapter 95, Laws 1903, is confined to the determination of the number of special agents to be appointed and the amount of their compensation.

FRANK N. PARSONS,<br>
WILLIAM M. CHASE,<br>
JAMES W. REMICK,<br>
GEORGE H. BINGHAM.

Not having been able to confer with the other justices upon the question submitted by your excellency and the honorable council, or to properly consider it, I beg leave to be excused from the duty of returning an answer.

REUBEN E. WALKER.