Merrimack, }
Dec. 31, 1903. }

STEVENS, *Adm'x, Ap't,* v. STEVENS *& a., Adm'rs.*

The testimony of subscribing witnesses, to the effect that the seal found upon a will presented for probate is different from that affixed at the date of its execution, does not conclusively establish the fact that the original seal was removed by the testator with revocatory intent.

The declarations of a testator are not admissible to prove a revocation of his will, in the absence of other evidence directly tending to establish the fact.

PROBATE APPEAL, from the allowance of a will. The reason of appeal assigned was that the will had been revoked by tearing or cancellation. Trial by jury and verdict for the defendants. Transferred from the April term, 1903, of the superior court by *Peaslee,* J.

The scrivener who drew the will in 1882 testified that it was then executed and was sealed with a small red seal, and that he retained the instrument in his possession until 1892, when it was delivered to the testator with the seal upon it. When produced in court the will was sealed with a large green seal. The testimony of the second witness to the will tended to corroborate the foregoing, and the testimony of the third witness was waived. There was no evidence to explain the change in the seals. The testator died December 14, 1887, and no will was found among his papers. A daughter of the testator was named as executrix and residuary legatee; and after her death in March, 1901, the will was found among her effects and was offered for probate by her administrator, who is one of the defendants.

The plaintiff moved that a verdict be directed that the will was revoked by cancellation. The motion was denied, subject to exception. She also offered to show that at various times after 1892 the deceased said that he had revoked his will, or that he had no will. The evidence was excluded, subject to exception.

*George R. Brown* and *Martin & Howe,* for the plaintiff.

1. " Where a will is proved to have been duly executed, to have remained afterward in the testator's possession, or was last heard of in his custody, but at his death cannot be found, the presumption is that it was destroyed by him *animo revocandi.*" *Lane* v. *Hill,* 68 N. H. 275, 283 ; *In re Johnson's Will,* 40 Conn. 587 ; *Behrens* v. *Behrens,* 47 Ohio St. 323. In such case the absence of the will amounts to *prima facie* proof of its revocation,

and the party who asserts the contrary must prove it. *Minkler* v.
*Minkler*, 14 Vt. 125; *Idley* v. *Bowen*, 11 Wend. 227; *Collyer* v.
*Collyer*, 110 N. Y. 481. "Revocation is an act of the mind,
demonstrated by some outward and visible sign or symbol of
revocation." 1 Gr. Ev., *s.* 273; *Bibb* v. *Thomas*, 2 W. Bl. 1043.

Certainly the production of the will in a mutilated condition is
better evidence of the requisite "visible sign or symbol of revoca-
tion" than absence of the will. If a will is traced into the
testator's possession, and at his death cannot be found or is found
torn, the presumption is that he destroyed or tore it *animo revo-
candi*. 1 Jar. Wills *133; Schoul. Wills, *s.* 401; *In re White's
Will*, 25 N. J. Eq. 501; *Smock* v. *Smock*, 3 Stock. 156; *Patterson*
v. *Hickey*, 32 Ga. 156. If either the will cannot be found, or is
produced mutilated, the burden of proof is on the party setting
up the will to show that the act of destruction was without
intention to revoke the will. 2 Gr. Ev., *s.* 681; *In re White's
Will, supra; In re Philp's Will*, 19 N. Y. Supp. 13; *Thynne* v.
*Stanhope*, 1 Add. 52; *Baptist Church* v. *Robbarts*, 2 Pa. St. 110;
*Evans' Appeal*, 58 Pa. St. 238. In this case the will was traced
into the testator's possession, and when produced was shown by
all the evidence to have been mutilated by removing the seal.
There was no evidence to explain the change. The will was
revoked, and a verdict should have been directed for the plaintiff,
if the removal of the seal was such a mutilation as to bring this
case within the *prima facie* presumption applicable to mutilated
wills, established by all the adjudicated cases.

Where a will is traced into the testator's possession, and it
comes from thence after his death with marks of mutilation upon
it, the presumption is that *he* mutilated it *animo revocandi*. 1 Jar.
Wills *133; 1 Will. Ex. *134; Schoul. Wills, *s.* 401; *Patterson* v.
*Hickey, supra*. In this case the fact that the seal had been
removed was not apparent upon examination. The fact was
shown by the witnesses to the will; and shown in that way, the
fact has the same effect as though the mutilation were apparent.
"It is nowhere held that the contestant . . . must account
for the mutilation." *Clark's Will*, 1 Tuck. 445. The cases agree
that where any suspicion is raised as to the genuineness of an
altered instrument, the party producing it is bound to remove the
suspicion by accounting for the alteration. 1 Gr. Ev., *s.* 564,
note; *Hills* v. *Barnes*, 11 N. H. 395; *Humphreys* v. *Guillow*, 13
N. H. 385.

Here there had been spoliation and repair. If taking off the
seal makes a *prima facie* case of revocation, finding a new seal on
the will does not rebut the presumption. It may be a fair infer-
ence that the testator put the new seal on; but if he revoked his

will when he tore the old seal off, he could not make the instrument his will by resealing it; republication would be necessary. *Bell* v. *Fothergill*, L. R. 2 P. & D. 148. If after tearing the seal off he returned to the intention expressed by the will and then put the new seal on, it is certain that the will is invalid, because there was an interval when it was not his will, and since then he did not republish it. Despite all theories as to how the old seal got off and the new one on, the fact remains that the will had undergone a change between its execution and presentation in court. The original seal was missing. That fact made a *prima facie* case of revocation; and as the proponents offered no evidence to rebut the *prima facie* case, a verdict for the contestant should have been ordered.

*Streeter & Hollis*, for the defendants.

PARSONS, C. J. The submission of the issue of revocation to the jury upon the evidence reported does not present any error of law prejudicial to the contestants. Conceding the soundness of their claim,—that the removal by the testator, with revocatory intent, of the seal from a will published as sealed is a revocation of the will, and that if a will be found among the papers of the deceased with the seal torn off the presumption is, in the absence of explanation, that the seal was removed by the testator with intent to revoke the will,—the case does not fall within the principles relied upon. The will was not found with the seal apparently torn off, nor was it found among the testator's papers. The fact that the will was not shown to have been in the testator's possession, or was not found among his papers after his decease in the condition in which it was presented for probate, assuming that upon the evidence a mutilation of the will could be found, upon all the authorities leaves no basis for the presumption of revocation. 1 Red. Wills 307; 1 Jar. Wills *134; *Bennett* v. *Sherrod*, 3 Ired. 303,—40 Am. Dec. 410; *Throckmorton* v. *Holt*, 180 U. S. 552, 584. The evidence of mutilation was equally insufficient. The document itself furnished no evidence; it was apparently perfect.

The sole evidence upon which it is claimed it should be conclusively inferred that the seal was removed from the will by the testator, with intent to revoke the will, was the testimony of two of the subscribing witnesses that the seal put upon the will when it was executed was colored red, while the will when presented for probate bore a seal of a green color and larger size. Whether the seal originally put upon the document was different from the one borne by it at the trial was a question of fact determinable by

the jury, according to the comparative weight in their estimation of the evidence furnished by the document itself (*Fogg* v. *Moulton*, 59 N. H. 499), which was admittedly sealed when executed, and that furnished by the recollection of the witnesses. Reasonable men might doubt the reliability of the recollection of the witnesses as to the color and size of a seal last seen by them at least ten years before. That the fact upon which the contestants relied was not conclusively established by the evidence, was a sufficient reason for the denial of their motion for a verdict.

But assuming that the only fact the testimony tended to prove —namely, that the will was originally sealed with a red seal— were established, the contestants stand no better. The tearing or cutting of a will, or the removal of a seal by either method, is evidence of an intelligent purpose to inflict injury upon the instrument. If a will which has been so treated is found remaining in the testator's possession, the doctrine of the cases upon which the contestants rely is, that inasmuch as such an act done by some person without authority from the testator would constitute a crime, the inference is not in the first instance that a crime has been committed, but that the act has been done rightfully, and hence by the testator or by his direction. It is matter of common knowledge that a seal such as was used in this case—a disc of paper attached by mucilage—by lapse of time may lose its power of adhesion and drop off, and that an intentional removal might be accompanied by some mutilation of the paper to which it was attached. However this may be, it is sufficient that the absence of any mutilation of the paper does not conclusively establish, nor is it evidence, that the removal was intentional. Whether the original seal fell off by accident, or was intentionally removed, is upon the evidence mere matter of speculation, and hence there is nothing for the jury. *Deschenes* v. *Railroad*, 69 N. H. 285. Upon the assumption that the case contains all the evidence, no ground appears upon which a verdict for the contestants could have been sustained. They therefore are not harmed by the refusal to order one in their favor.

The evidence of the testator's delarations that he had no will and that he had revoked his will were properly excluded. That he had a will was conclusively proved by the production of the document whose original authenticity was not disputed. The only force of the statements was to prove that the testator thought that he had done something to the will which in his opinion constituted a revocation, or that he thought it was revoked as matter of law from some change in his circumstances. P. S., *c.* 186, *s.* 15. A will can be expressly revoked only as prescribed by statute. P. S., *c.* 186, *s.* 14. The testator's own opinion that he has revoked his

will is of no more probative force than his opinion that he has executed a will. In each case, the question is not of the testator's understanding, but whether he has fulfilled the conditions necessary to the exercise of the right. Hence it has been said that " the express revocation of a will . . . cannot be shown by declarations of the testator alone." *Lane* v. *Hill*, 68 N. H. 275, 282; *Hoitt* v. *Hoitt*, 63 N. H. 475, 499, 500. In *Lane* v. *Hill*, 68 N. H. 275, it was held that although the due execution of a will could not be found from evidence of the testator's declarations alone, nevertheless, " when there is evidence competent for the jury upon the question of due execution, and from which they may properly find such execution," evidence of declarations of the testator tending to corroborate the direct evidence of execution is admissible. This conclusion has been questioned in argument, but it is unnecessary to consider the point, because, as has already been seen, the case contains no evidence directly tending to establish a revocation of the will. Without such direct evidence of some act constituting revocation, the evidence, as was said in *Lane* v. *Hill, supra,* 282, " is but proof of the testator's understanding, and the testator's understanding cannot take the place of the formalities prescribed by law." *Hoitt* v. *Hoitt, supra.*

*Exceptions overruled.*

All concurred.