Hillsborough, }
Nov. 1, 1904. }

## Rollins Engine Co. v. Eastern Forge Co.

A warranty not expressed in or implied from the terms of a written contract cannot be supplied by implication of law or parol proof.

In the absence of an express warranty, one who undertakes to purchase steel and forge the same into a piston rod of a specified size, shape, and finish, is liable for only such defects in the raw material or manufactured product as were discoverable by ordinary care.

Assumpsit, for the breach of an implied contract to manufacture upon the plaintiffs' order a safe and proper piston rod for an engine. Trial by jury and verdict for the plaintiffs. Transferred from the September term, 1903, of the superior court by *Wallace*, C. J.

The plaintiffs are engaged in manufacturing engines at Nashua, and the defendants in making forgings at the same place. In July, 1902, the defendants received from the plaintiffs a written order for "one steel piston rod as per enclosed blue print, 21x42." The blue print contained a drawing of the desired rod with the dimensions of its various parts, and the words "rough turn to figures." The figures "21x42" in the order mean that the cylinder for which the rod was intended was twenty-one inches in diameter with a forty-two inch stroke.

The defendants manufactured the rod under the order and delivered it to the plaintiffs, who finished it by turning off one eighth of an inch of material and by polishing the surface, and used it in the construction of an engine which they were under contract to furnish to one of their customers. After the engine had been in use about a week, it was damaged by the breaking of the rod. The plaintiffs claimed that the rod broke because it was made of poor material. The defendants claimed that the break was due to other causes, and their evidence tended to show that the rod was manufactured by them from a steel billet purchased from a reputable dealer, and that there was no defect in the material discoverable by ordinary care.

Subject to the defendants' exception, the court refused to give the jury the following instructions:

"1. If you find for the plaintiffs, the measure of damages will be the difference between the value of the piston rod as it was before it was broken and afterward.

"2. The defendants did not impliedly warrant the material of which the piston rod was made, which was bought of another manufacturer, to be free from all defects, but only to be free from

defects of which the defendants must have been informed if due care had been used, and against which reasonable diligence might have guarded.

" 3. The defendants did not impliedly warrant the piston rod to be free from all defects arising from the process of manufacture, but only to be free from defects of which the defendants must have been informed if due care had been used, and against which reasonable diligence might have guarded."

Subject to the defendants' exception, the jury were instructed as follows: " In the case of executory contracts  .  .  .  for the manufacture of articles for a special use, the law implies a contract that the articles to be manufactured shall be reasonably fit and proper for the use for which they are ordered and designed. There was under this contract an implied warranty upon the part of the defendants that the piston rod, which they manufactured upon the plaintiffs' order, should when finished be reasonably fit and proper for the purposes for which the defendants knew it was designed—that is, to be used as a piston rod to an engine. Such warranty extends to the defects in the piston rod, both in respect to the material of which it was made and as to its make or manufacture, which rendered it unfit for the purposes for which it was designed."

The question of the suitability of the piston rod for the purposes for which it was designed was submitted to the jury. In the course of the trial, the defendants having offered evidence tending to show that the quality of steel could be shown by a chemical test, their counsel in the presence of the jury asked the court to order that a piece of the broken piston rod be cut off and given to them for the purpose of a chemical analysis. The court denied the request as matter of discretion, and the defendants excepted.

In his closing argument the plaintiffs' counsel said: " There is no testimony in the world so biased as the testimony of an expert. I am tired of this kind of testimony from experts who are just as much parties to this defendant's case as the attorneys who stand here.  .  .  . You know that you can get as many experts on one side as on the other, if you go to work and try." To these remarks the defendants excepted.

*George B. French*, for the plaintiffs.

*John Herbert* (of Massachusetts) and *Burnham, Brown, Jones & Warren*, for the defendants.

PARSONS, C. J.   The theory of the plaintiffs upon which the case was tried and submitted to the jury cannot be sustained.

The contract was in writing. A warranty not expressed or implied from the terms used cannot be added by implication of law or parol proof. *Whitmore* v. *Iron Co.*, 2 Allen 52, 58 ; *Goulds* v. *Brophy*, 42 Minn. 109. The written order which was the basis of the contract was for a steel piston rod of specified dimensions. The plaintiffs were engaged in the manufacture and sale of steam· engines at Nashua, and the defendants in the making of forgings at the same place. It is not suggested that the defendants were manufacturers of steel, or that the plaintiffs understood them to be. Read in the light of the surrounding circumstances, the order means that the defendants should secure by purchase the necessary steel and forge the same into the specified shape with the required finish, to be used by the plaintiffs for a piston rod in some steam engine to be sold by them. The contract was not for a piston rod for the plaintiffs' engine. It is distinguishable from the contract in *Randall* v. *Newson*, 2 Q. B. Div. 102, which was for a pole for the plaintiffs' carriage, and from that in *Brown* v. *Edgington*, 2 M. & G. 279, which was for a rope for the plaintiff's crane. The plaintiffs did not rely upon the defendants to furnish a suitable piston rod for any particular engine, or for a steam engine generally. They prescribed the material and dimensions of the forging desired ; and the fact that, when finished by the plaintiffs and made a part of an engine, the rod proved unsuitable, does not establish the defendants' liability. For any defect due to the kind of material or dimensions prescribed, the plaintiffs and not the defendants would be responsible. *Nashua Iron and Steel Co.* v. *Brush*, 91 Fed. Rep. 213. In these respects the plaintiffs relied upon their own judgment, and not upon the defendants'. *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, 203.

" If an article or fabric in the particular line of his profession or business is ordered of, or contracted for with, a manufacturer, for a special and designated purpose, and the parties agree that it shall be constructed of a certain kind of materials, but the selection of the particular articles to be used and the way and manner of using and adapting them to the fabric, in the completion of the work, are left to the choice and judgment of the latter, without any special stipulations relative thereto, he will not in that case be liable for any loss or damage which may result from the imperfection of, or natural defects in, that kind of material ; but he will be held to have impliedly warranted that he possesses the knowledge and skill requisite to use them properly and in the most advantageous manner, and that, in answering the order or in fulfilling his contract, he will use all reasonable care and skill in the selection and use of them. And if, through his failure in either of these respects, the article or fabric furnished is unsuitable or

insufficient for the purpose for which it was supplied, he will be responsible in damages therefor." *Cunningham* v. *Hall*, 4 Allen 268, 274, 275.

The obligation, "implied by reason and construction of law" (3 Bl. Com.* 163), of one who undertakes to perform service for another, is due care. He contracts to exercise the diligence and skill of the average man of the ability which he professes in like work. If he exercises such care he is not liable, in the absence of express contract, merely because the expected result is not obtained. *Leighton* v. *Sargent*, 27 N. H. 460; *Spead* v. *Tomlinson*, *ante*, *p.* 46. If the plaintiffs had taken to the defendants a steel billet, to be forged by them into a particular shape for a piston rod, the defendants' contract would have been to exercise the care and skill of average persons engaged in like work. Similarly, if the plaintiffs had employed the defendants to select for them a billet of steel suitable for such forging, the defendants would not be understood to warrant the correctness of their judgment merely because they undertook the commission. For failure to detect a defect which could not be found by ordinary care in the exercise of the skill they had or professed to have, they would not be liable. The fact that the plaintiffs by one order employed the defendants to select the steel and forge it into a specified shape for a certain use does not make the measure of their liability different from what it would have been under the separate contracts suggested. The defendants' evidence that the defect in the steel was undiscoverable by ordinary care tends to establish the possibility of an undiscoverable, inherent defect in the material of which the plaintiffs stipulated the rod should be forged. Having relied upon their own judgment as to the material to be used in the manufacture, or desiring an article necessarily to be made of such material, they cannot hold the defendants responsible for a defect which the skill and care which the defendants professed to possess, and which they were bound to exercise, could not discover. Ordinary care is such care as persons of average prudence exercise under like circumstances. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 161. The defendants knew the forging was to be used for a piston rod for a steam engine. Merely purchasing the steel from a reputable manufacturer may not be due care in the selection of the material for such a purpose. It may be, and the evidence which the defendants offered indicates, that there are tests which can be applied to determine the character of steel. Whether the defendants did all that due care required was for the jury, and the question should have been submitted to them, as requested by the defendants.

"Where a known, described, and defined article is ordered of a

manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, defined, and described thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer." *Gregg* v. *Company*, 69 N. H. 247, 249. The forging furnished by the defendants complied with the requirements of the order. It was of steel, of the prescribed dimensions, and finished as required. It is not entirely clear that the case is not within the application of the rule made by Judge *Carpenter* in the case cited. The principle for which the plaintiffs contend is stated by Judge *Bell* in *Deming* v. *Foster*, 42 N. H. 165, 173, 174, as follows: " In the case of executory contracts for the making or furnishing goods or articles for a special use, the law implies a contract that the articles to be made or furnished shall be reasonably fit and proper for the use for which they are ordered." It has already been suggested that the case is not within this rule.

But the law has other foundation than a collection of rules applicable to the decision of causes with the rigidity of statutes. It is obvious that a rule which settles one controversy, because consonant with reason and justice as applied to existing facts, may not so apply in another case in which different facts appear. Instead of attempting to merely cover the case before the court with one rule or the other, the proper inquiry is for the underlying reason which must be the basis of all rules. It has been seen that, interpreting the contract as the employment of the defendants to perform certain services, the measure of the defendants' liability is due care. Such was considered to be the measure of the manufacturer's liability in *Gregg* v. *Company*, 69 N. H. 247. If the same rule measures the defendants' liability under the situation contended for by the plaintiffs,—the supply of an article for a particular purpose,—the correct classification of the facts reported, as within the terms of either rule, is practically unimportant. The instructions given, with those asked and refused, raise the question of the responsibility of the manufacturer of an article ordered or purchased for a known use.

It has been several times remarked that the confounding of conditions precedent with implied warranties has resulted in great conflict in the decisions. *Wilson* v. *Lawrence*, 139 Mass. 318, 321, 322; *Wisconsin etc. Co.* v. *Hood*, 60 Minn. 401, 404; *Chanter* v. *Hopkins*, 4 M. & W. 399. A pregnant case of apparent conflict is the failure to recognize that the real question in each case was as to the contract between the parties. Where there is doubt of the intent of the parties, as disclosed by competent evidence of their purpose, the reasonableness of one conclusion or the other,—the probability that men would intelligently enter into this or that

engagement,—is evidence competent for consideration upon the question what the contract was. *Sanders* v. *Insurance Co.*, 72 N. H. 485, 497, 498; *Kendall* v. *Green*, 67 N. H. 557, 563. Tested by this rule, most of the decisions will be found to have reached the right result, although the reasons advanced may appear to conflict.

The delivery of the manufactured article from the manufacturer to the customer involves a transfer of title to the thing itself. Looking at the transaction merely as a sale, it has been held that when an article manufactured or supplied for a particular purpose is delivered, the contract of sale includes, as an implied term or warranty of the contract, the stipulation that the article is reasonably fit and proper for that use. *Deming* v. *Foster*, 42 N. H. 165. Under this line of reasoning, it was held in *Randall* v. *Newson*, 2 Q. B. Div. 102, 109, that in such contracts "the fundamental undertaking is, that the article offered or delivered shall answer the description of it contained in the contract. That rule comprises all the others; they are adaptations of it to particular kinds of contracts of purchase and sale. You must therefore determine from the words used, or the circumstances, what, in or according to the contract, is the real mercantile or business description of the thing which is the subject-matter of the bargain of purchase or sale, or, in other words, the contract. If that subject-matter be merely the commercial article or commodity, the undertaking is that the thing offered or delivered shall answer that description; that is to say, shall be that article or commodity, salable or merchantable. If the subject-matter be an article or commodity to be used for a particular purpose, the thing offered or delivered must answer that description; that is to say, it must be that article or commodity, and reasonably fit for the particular purpose. The governing principle, therefore, is that the thing offered and delivered under a contract of purchase and sale must answer the description of it which is contained in the words of the contract, or which would be so contained if the contract were accurately drawn out." It is impossible to criticise the soundness of this reasoning, but the conclusion drawn from these premises does not necessarily follow. The court continue: "And if that be the governing principle, there is no place in it for the suggested limitation. If the article or commodity . . . does not in fact answer the description of it in the contract, it does not do so more or less because the defect in it is patent, or latent, or discoverable." The difficulty with this conclusion is that it assumes that the description of the article in the contract necessarily means a perfect article, or one in fact reasonably so. But if it appears from the language or circumstances, that by the terms used the parties meant an article as reasonably fit and

proper as due care could make it, the suggested limitation would not make the article different from what the parties intended. If the article be such that due care in the selection of materials and the process of manufacture will certainly produce a reasonably suitable article, it is immaterial whether we regard the engagement of the manufacturer to be to produce a reasonably suitable article, or to exercise due care in its production; for the terms are then synonymous. They were so understood in *Jones* v. *Bright*, 5 Bing. 533, by *Best*, C. J., whose *dictum* in that case seems to be the foundation of the rule. The following language used by him has been often quoted (*p.* 544) : " If a man sells an article, he thereby warrants that it is merchantable,—that it is fit for some purpose. . . . If he sells it for a particular purpose, he thereby warrants it fit for that purpose. . . . Reference has been made to cases on warranties of horses; but there is a great difference between contracts for horses and a warranty of a manufactured article. No prudence can guard against latent defects in a horse; but by providing proper materials, a merchant may guard against defects in manufactured articles; as he who manufactures copper may by due care prevent the introduction of too much oxygen; and this distinction explains the case of *Bluett* v. *Osborne* [1 Stark. 384], in which Lord *Ellenborough* held that the defendant, who had sold a bowspirit, was not responsible for a failure arising out of a latent defect in the timber." This language is very far from a suggestion that a manufacturer can reasonably be understood to impliedly warrant against a defect not preventable or discoverable by due care; for the only ground on which it is suggested that such implication is contained in the contract is that the defect understood to be warranted against is discoverable by due care.

In *Rodgers* v. *Niles*, 11 Ohio St. 48, the question arose upon an exception to an instruction that " any hidden, accidental defect will not impose a liability on the manufacturer to respond in damages." Whether the hidden or accidental defect could have been avoided by due care was not the question raised. A majority of the court conclude the defendants' contract to have been " to procure such materials and apply such workmanship as would furnish to the plaintiffs steam boilers [the subject of the contract] free from all such defects, latent or otherwise, as would render them unfit for the ordinary uses contemplated by the contract," while the minority approve the conclusion reached in *Hoe* v. *Sanborn*, 21 N. Y. 552, that " the vendor is liable in such cases for any latent defect not disclosed to the purchaser, arising from the manner in which the article was manufactured, or if he knowingly used improper materials he is liable for that also; but not

for any latent defect in the material which he is not shown, and cannot be presumed, to have known." *Bragg* v. *Morrill*, 49 Vt. 45, and *McKinnon Mfg. Co.* v. *Fish Co.*, 102 Mich. 221, follow the rule as laid down in *Hoe* v. *Sanborn.* In *Carleton* v. *Lombard*, 149 N. Y. 137, 153, a case of the sale of refined petroleum, it is said that the obligation of the seller of a manufactured article was to deliver an article " that was free from latent or hidden defects that rendered it unmerchantable at the time and place of delivery, and that could have been avoided or guarded against in the process of refinement or in the selection of the raw material, by reasonable care and skill." See *Wisconsin etc. Co.* v. *Hood*, 60 Minn. 401, 404 ; *S. C.*, 67 Minn. 329, 335.

The great weight of authority rests the rule, that the manufacturer impliedly warrants or agrees to deliver an article made for a special purpose free from latent defects, upon the presumed superior knowledge of the manufacturer and the purchaser's reliance upon the knowledge and skill of the maker. *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, 203 ; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, 116. Whether the presumption is justifiable in a particular case, is a question of fact. Whether any other reasonable inference can be drawn from the facts in evidence, is the question of law. The knowledge of both parties upon the subject-matter, the possibility (considering the nature of the material to be used and of the process of manufacture) that due care may or may not fail to produce a reasonably suitable article, or to discover the defect until the article is in use, are circumstances for consideration upon the question of what the contract was. If castings cannot be made without blow-holes, it would be unreasonable to infer, in the absence of express language, that a manufacturer of castings contracted to make a casting without any defects of that character, although his contract may properly be that there should be no more defects of that nature than are consistent with due care in the manufacturing process. *Tenn. etc. Co.* v. *Leeds*, 97 Tenn. 574, 576, 578.

In the present case, it might be found from the evidence reported that the plaintiffs, from their business, were acquainted with the characteristics of the material to be used, and that they knew it might contain defects which would render the manufactured article unfit, which could not be ascertained by due care. Where both parties have knowledge of the subject of the contract, and that it may possess latent defects which cannot be prevented by due care in the selection of materials or in the process of manufacture, it would be unreasonable to infer, in the absence of express language to that effect, that the seller intended to warrant what he could not know to be true, or that the purchaser, in reliance upon the skill

and judgment of the manufacturer, which he knows may be insufficient for the purpose, expected to receive a perfect article. It is more probable in such cases that the parties contracted with reference to such an article as would be produced by the skill and judgment which the manufacturer was known or professed to possess. In such case the measure of the manufacturer's liability is due care. In whatever light the transaction is examined, this is the measure of the defendants' liability under the contract in this case.

No reason appears from the case why the plaintiffs should have been unwilling to permit a test to be made of the steel which they claimed was defective. The power of the court to order such tests to be made is a question not raised or considered. There was certainly no error in informing the jury that the plaintiffs refused to permit such examination. The exceptions to the instructions given and refused upon the main question are sustained.

There was no error in the refusal to give the instructions requested upon the question of damages. The rod, if actually defective, would seem to have been as valuable after as it was before the defect was discovered. If the request was intended to limit the damages to the value of a sound rod less the value of the broken metal, that proposition would not constitute a correct statement of the rule. *Hutt* v. *Hickey*, 67 N. H. 411, 417 ; *Noyes* v. *Blodgett*, 58 N. H. 502. It is unnecessary to consider whether the instructions given were entirely correct under the rule of liability adopted at the trial.

The only exception remaining which has been relied upon is that to the remarks of counsel in argument. These appear at least to be dangerously near the line, but the result already reached renders useless a consideration of the question whether the verdict could be sustained if this were the only error alleged.

*Verdict set aside : new trial granted.*

All concurred.