Merrimack, }
Oct. 6, 1908. }

### THEOBALD   *v.*   SHEPARD *& a.*

A finding as to the meaning of verbal testimony must be predicated upon a reasonable understanding of the language of the witness, and not upon an arbitrary or irrational interpretation thereof.

A bare scintilla of evidence does not authorize a finding of fact contrary to what is admittedly reasonable.

Whether evidence has a logical and reasonable tendency to prove a material fact is a preliminary question for the trial court. If it appears that reasonable men might so conclude, the evidence must be submitted to the jury; but if such conclusion can result only from chance, conjecture, or doubtful and unsatisfactory speculation, it is the duty of the court to exclude it from consideration.

Where the owner of a building employs another to do work upon it requiring peculiar knowledge and skill, an agreement to absolve the latter from responsibility for damage resulting from the negligence of himself and his servants is not to be inferred from ambiguous and doubtful testimony.

A verdict is not set aside for erroneous instruction when it is apparent, upon a reasonable construction of the whole charge, that the jury were not misled thereby.

Whether a witness offered as an expert is qualified to testify in that capacity is a question of fact determinable by the trial court.

QUANTUM MERUIT, to recover compensation under a special contract for moving a three-story frame building in Franklin. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1907, of the superior court by *Pike*, J.

The work was mainly done under charge of the plaintiff's foreman, and covered a period of twenty days. The plaintiff's evidence tended to prove that the contract was that he should receive an amount equal to the actual cost of doing the work and a good profit in addition thereto. The "good profit" was understood to embrace use of tools and personal services, with the responsibilities that attach to such an undertaking. The defendants' evidence tended to prove that the contract was as above stated, with the exception that the defendants were to assume the risks as shown by their testimony. The plaintiff denied that there was any agreement that the defendants were to assume any risks, and claimed that he assumed all risks and responsibilities as an independent contractor.

All of the defendants' evidence bearing upon their contention that the contract was that they should assume certain risks was the testimony of the defendants themselves. John S. Shepard, one of the defendants, testified as follows: " In regard to the work, or the liability, we discussed that thoroughly. He said he hired the men ; he says he told his men that this was a class of work, this was a work, if they wanted to go to work at that kind of business if they got their fingers pinched, anything of the kind, it would be on them ; it was their work. On the other hand, in all the other risks of the building would be on us ; that we should have to take care of it. And I asked him lots of questions in regard to the liability, what might happen, accidents, or what liability, as he had moved buildings and we never had had any experience in that line ; and asked him in regard to it, how we were to protect the building. He said he thought there would be no trouble, seldom had any trouble ; if a horse was frightened, or any one hurt, or any damage done, it would be on us ; he was simply doing plain day work. And of course we protected the building, put lanterns up by night, and picked up after the men."

Seth B. Shepard, the other defendant, testified as follows : " Theobald said there was no trouble with moving the building ; he would take hold and move it, and he would move it at cost,

and should want a good profit, and we should take the risk; and he was to have what material there was, what lumber and ties and things like that that were on the spot."

Q. "Who should take the risk?" A. "Shepard Brothers. We were to take all risk."

Q. "You recollect of anything, any other talk in connection with assumption of risk?" A. "Well, we asked him what some of the risks were, and he said of course—and what would be necessary to do—he said of course it would be necessary to light up around the building and like that, and that there wasn't very much risk; of course there might possibly be some accident or something, but they rarely ever had any."

The defendants did what work was necessary to warn the traveling public of the dangers incident to the moving building, to wit, they placed barrels and planks in the highway and hung up lanterns at night. The plaintiff knew they did this, but claimed that he understood they were thereby saving themselves the expense which he would otherwise have charged them for doing this work.

The defendants excepted to a part of the charge to the effect that there was nothing in the case which warranted the jury in finding that the plaintiff was relieved of responsibility (1) to his servants and (2) to Shepard Brothers in the performance of the work. They also excepted to that part of the charge relating to the caring for the traveling public, wherein the court said: "If Theobald never understood that they were relieving him from any responsibility although the Shepard Brothers may have thought they were,—if their minds never met on that proposition,—then the responsibility still rested upon Theobald."

*Martin & Howe*, for the plaintiff.

*Leach, Stevens & Couch*, for the defendants.

WALKER, J. If there was no evidence legally tending to prove that the defendants agreed with the plaintiff, as a part of the contract, that they would be responsible for all injuries the workmen might suffer occasioned by the plaintiff's negligence, the court committed no error in saying to the jury that there was nothing in the case to warrant such a finding. It is elementary that a finding of fact must be predicated upon some evidence. An examination of the testimony bearing on this branch of the case fails to disclose any evidence of such an agreement. John S. Shepard's testimony indicates plainly that he did not intend to include in the risks assumed by the defendants the plaintiff's liability to his men for injuries they might receive while engaged on the work; nor

did Seth B. Shepard in his testimony refer to that subject. Both witnesses testified that they talked over the matter of risks they were to be responsible for in detail with the plaintiff, and both say, substantially, the risks referred to such injuries as the public might suffer by reason of the moving of the building along the street or highway. The testimony has no reasonable tendency to prove that the defendants intended to assume any other or greater liability.

When it is said that the defendants were to assume all the risks incident to the work, a question of the interpretation of language arises; and this is in effect a question of intention. What did the witnesses intend by the language used? This question is not solved by giving an arbitrary or unreasonable meaning to verbal testimony. In finding what a witness means it is not permissible to reach a result which reasonable men could not entertain. Upon such a question of fact, the finding or verdict must appear to be based upon some reasonable understanding of the meaning of language as understood and sanctioned by the court. A bare scintilla of evidence is not sufficient to support unreasonable verdicts. However it may have been in ancient times, a mere spark of evidence does not authorize a finding of fact, contrary to what is admittedly reasonable. "Decided cases may be found where it is held that if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but decisions have established a more reasonable rule, to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." *Paine* v. *Railway*, 58 N. H. 611, 614. "We do not mean to say that a mere scintilla of evidence would suffice to sustain an award; but in the absence of any evidence of prejudice, partiality, or corruption, or a manifest mistake on the part of the referee, the award must stand if there appears to have been any substantial evidence upon which the referee could properly proceed to find an award in favor of the party producing it, upon whom the burden of proof was imposed." *Free* v. *Buckingham*, 59 N. H. 219, 224.

In the present state of the law upon this subject, extended discussion of the decisions is unnecessary. "In the absence of some evidence as to the fact, a judicial trial does not substitute an unfounded guess or conjecture for the legal proof which the law requires." *Deschenes* v. *Railroad*, 69 N. H. 285, 291. And "some evidence" means evidence having a logical and reasonable tendency to prove the fact. Whether it has that

tendency is a preliminary question for the court. This is not the same as saying that the court may substitute its judgment for the judgment of the jury upon the weight of the evidence or the inferences to be drawn from it. If the court can see that reasonable men, considering the evidence as jurors are bound to consider it, may find that it proves the existence of a material fact, the court has performed its preliminary duty and must then submit the evidence to the jury; on the other hand, if it appears that reasonable men upon the evidence could only reach that conclusion by conjecture, chance, or doubtful and unsatisfactory speculation, it is equally the duty of the court to withdraw or exclude the evidence from the consideration of the jury. See *Hovey* v. *Brown*, 59 N. H. 114; *Hardy* v. *Railroad*, 68 N. H. 523, 536; *Horan* v. *Byrnes*, 70 N. H. 531, 533; *White* v. *Dakin*, 70 N. H. 632; *Dame* v. *Car Works*, 71 N. H. 407; *Cohn* v. *Saidel*, 71 N. H. 558, 568; *Stevens* v. *Stevens*, 72 N. H. 360; *Reynolds* v. *Fibre Co.*, 73 N. H. 126; *Miller* v. *Railroad*, 73 N. H. 330, 333; *Wright* v. *Railroad*, 74 N. H. 128; 2 Thomp. Trials, *ss.* 2246, *et seq.*

The claim that from the defendants' evidence it could be reasonably and properly found that they agreed to assume the risk of the negligence and want of skill of the plaintiff's employees in moving the building—that is, that they would release and waive all claims they might otherwise have against the plaintiff for damage to the building caused by the unskillful and negligent conduct of the men engaged in moving it—cannot be sustained   The language of the witnesses does not require so broad a construction. The assumption of " all risk," when read in connection with the subject under discussion by the parties at the time of the contract, evidently related to the liability to the public for damages occasioned by moving the building.   And this construction of the language of the witnesses is strengthened materially by a consideration of the fact that it is extremely unusual, if not quite absurd, for a man, when employing a contractor to do work involving peculiar knowledge and skill, like the moving of large buildings for considerable distances, to agree to be satisfied with a bad result due to the fault of the contractor or his employees.   Whether such a contract would be legally binding is a question that need not be considered; the point of our observation is, that if the parties intend to make such a peculiar contract it would be natural to expect that they would use apt language to convey their meaning, and that when called upon to testify as to its terms, they would not leave their meaning to be inferred from ambiguous and doubtful phrases.   One important part of an agreement by A to move a building for B is that A will do the work in a reasonably careful and prudent manner; B is entitled to the best result of

the undertaking which ordinary care and prudence on the part of A can accomplish. Presumably, he employs A in order to have the benefit of his skill; but if he does not,—if he waives his ordinary right to the skillful performance of the work,—the evidence of such an unusual course of dealing should be something more than ambiguous language from which it is as reasonable to infer the non-existence of such an understanding as its existence. "It is the very great improbability that the parties intended a result so absurd that leads to the conclusion, in the absence of evidence to the contrary, that they had no such intention." *Kendall* v. *Green*, 67 N. H. 557, 563; *Opinion of the Justices*, 72 N. H. 605, 607, 608; *Rollins Engine Co.* v. *Forge Co.*, 73 N. H. 92, 96.

As applied to this case the question is, whether it could be reasonably and logically found from the defendants' evidence that it was agreed that in case the building was negligently moved, resulting in material loss to them, they waived their claim against the plaintiff therefor. It is difficult to conceive how reasonable men could reach that conclusion, or how they could say on the evidence that it is more probable than otherwise the parties entered into a contract so unusual, if not absurd. It is a mere conjecture or possibility that they had that intention—not a rational or logical probability. "Upon this point reasonable men could not differ, and but one sustainable verdict could be rendered. Hence it was proper for the court to refuse to submit the question to the jury." *Waldron* v. *Railroad*, 71 N. H. 362, 364.

The charge of the court with reference to the defendants' assumption of the plaintiff's responsibility to the public was correct. The defendants excepted to a single sentence of the charge on this subject, wherein the court said: "If Theobald never understood that they were relieving him from any responsibility although the Shepard Brothers may have thought they were,—if their minds never met on that proposition,—then the responsibility still rested upon Theobald." The responsibility here referred to evidently means such responsibility as would belong to the plaintiff if no special agreement had been made in regard to it. Taking the charge as a whole, the jury could not have understood from it that, if there was no special agreement as to the risks connected with the work, the plaintiff would be entitled to recover compensation for a risk which was legally chargeable to the defendants, or that he could recover on account of risks for which he was not legally chargeable. If, in the absence of a special agreement, the defendants would ultimately be liable for damages to the public caused by moving the building along the street, as claimed by them (*Thomas* v. *Harrington*, 72 N. H. 45), the instruc-

tion excepted to did not warrant an inference by the jury that the plaintiff's damages were enhanced thereby.

The fact that before the defendants employed the plaintiff they had let the job to one Davis, who commenced to do the work but finally gave it up, was introductory to the testimony of the plaintiff that Davis "could n't move the building." For the purpose of contradicting the plaintiff, the defendants offered to show that the reason Davis gave up the work was because he was sick, and they excepted to the refusal of the court to receive this testimony. Davis' sickness, if it was a fact, may have furnished a reason why he did not or could not carry out his contract, but it did not contradict the plaintiff's evidence that he was unable to complete the work. As the plaintiff did not testify why Davis failed to do the work, the proffered evidence was properly excluded as immaterial.

The ruling of the court that certain witnesses were not qualified to give an opinion as to the expense of moving buildings presents no error. The qualification of one to testify as an expert is a preliminary fact to be found by the court and is not subject to exception. *Jones* v. *Tucker*, 41 N. H. 546. Nor was it error for the court to find that a certain letter written by the plaintiff to the defendants, offering to make a discount, was intended as an offer of compromise under the circumstances, and to exclude it for that reason. *Bartlett* v. *Hoyt*, 33 N. H. 151, 165; *Field* v. *Tenney*, 47 N. H. 513, 521; *Colburn* v. *Groton*, 66 N. H. 151, 158; *Jenness* v. *Jones*, 68 N. H. 475.

The remark of the plaintiff's counsel in argument, that the plaintiff was the only man in the state who could do this work, was justified by the plaintiff's testimony that he knew of no one in the state who did as heavy work as he did.

*Exceptions overruled.*

All concurred.