## CUMMINGS *v.* CENTER HARBOR.    { March 21, 1876.

*Finding of fact by referee—" Travelling upon the highway."*

A finding of fact by a referee will not be set aside where it appears that there was evidence upon which it might legally be based.

Whether one was " travelling upon the highway," within the meaning of the statute, at the time of an injury to his horse, is a mixed question of fact and law, and the decision of that question by a referee will not ordinarily be disturbed by the court, unless it appears that the referee mistook or misapplied the law.

FROM GRAFTON CIRCUIT COURT.

CASE, to recover damages caused by a defect in the highway.    The case has been to a referee, who reports the following statement of facts: " On October 20, 1871, plaintiff and his son were at the house of Thomas Webber, in Center Harbor.    The son drove his father's horse, attached to a wagon, to Fogg's station, so called, in New Hampton, on the Boston, Concord & Montreal Railroad, reaching the same soon after half-past eleven A. M., as found by the referee,—but the parties now agree that the time may be stated to be from twelve to seventeen minutes past twelve o'clock,—to wait for the up passenger train of cars, due about twenty-seven minutes past twelve, and also for the down passenger train, due about twenty-seven minutes past one P. M., expecting a friend on each train, and intending, upon the arrival of the down train, to return to the house of said Webber.    The weather was very cold and windy.    The son hitched the horse to an alder tree about four inches in diameter, standing in the limits of the highway by the side of the

travelled part of the same, and where other horses had been hitched, leaving the team standing across the travelled part of the road, on the declivity of a steep hill, the head of the horse being turned towards the place from whence he came. He hitched the horse with one rein, leaving the splices attached to the other rein lying between the dasher and whip standing in socket at end of dasher. He covered the horse with a buffalo robe, placed a stone behind one of the hind wheels, and then went into the station to wait for the train. After the arrival and departure of the up train, noticing that the robe was partially removed from the horse, he went out and adjusted it, and then went into a house standing on the railroad, and near the highway, to warm himself. After an absence of about twenty minutes he came out and found his horse had broken away and left, going toward home, and leaving a piece of broken rein attached to the tree, and the robe on the ground near where he was standing. The horse travelled about three fourths of a mile on the main road from Meredith to Ashland, into the town of Center Harbor, and stopped in the travelled path of the highway. He again started, and turned towards the right side of the highway, when the splices of the reins became entangled in some part of the wagon, and the horse was drawn back and over the edge of the bluff, on the other side of the road, fifteen feet high, and precipitated, with the forward wheels attached to him, into a pond, and was killed or drowned. The hind wheels, body of wagon, and seat, were left in the road. There was no railing on the edge of the bluff, which was about two and one half feet from the wheel-path.

"The referee finds that the plaintiff's son was not a traveller 'travelling upon the highway,' within the meaning of the statute; that in hitching and covering the horse he used ordinary care and prudence; that the horse stopped in the highway, in the town of Center Harbor, and upon starting, and turning partially round by reason of the entanglement of the reins with some part of the wagon, was drawn over the bluff and killed; that the want of a railing by the side of the highway, where the accident occurred, was a defect and insufficiency in the highway, within the meaning of the statute; that the injury occurred by reason of said defect and insufficiency. If the court shall be of the opinion that the plaintiff was a traveller 'travelling upon the highway,' within the meaning of the statute, then the referee finds for the plaintiff, and assesses damages in the sum of one hundred and four dollars and seventy-five cents, and also awards him costs of reference and costs of court."

The questions of law thereupon arising were transferred to this court for determination by STANLEY, J.

*Wilson*, for the plaintiff.

*Whipple*, for the defendant.

LADD, J. In *Hardy* v. *Keene*, 52 N. H. 370, it was held to be for

the jury, under proper instructions, to say whether a person who has met with an injury was travelling upon the highway, within the meaning of Gen. Stats., ch. 69, sec. 1. The referee finds that the plaintiff's son was not a traveller travelling upon the highway, within the meaning of that statute. The plaintiff insists that this finding was wrong, and that the court should hold, as matter of law, upon the facts stated, that the plaintiff's son was a traveller, &c., and so that the plaintiff was in the legal use of the highway by his horse and wagon at the time of the accident. I do not think this contention can be sustained. If there was any evidence having a legal tendency to show this fact to be as the plaintiff claims, then the referee has found against him. But, I must say, it seems to me there was no such evidence. If there was, it follows, so far as I can see, that the statute may have such interpretation as will impose upon towns the obligation to keep their roads in a condition to be safe for the passage of horses harnessed into carriages, unattended by any human being to guide and control them. At all events, the referee has found this fact against the plaintiff, and I think the case shows no ground upon which that finding should be disturbed.

CUSHING, C. J. Without undertaking now to define exactly what is meant by the terms " travelling upon a highway or bridge thereon,"— Gen. Stats., ch. 69, sec. 1,—it seems to me that the facts reported by the referee tend very strongly to show that in this case the plaintiff's agent was not so travelling. The horse appears to have been hitched so as to be standing partly, or wholly, out of the travelled path, and the carriage appears to have been standing across the highway, so as not only not to be moving itself, but to be in danger of obstructing others. The driver had made the horse as comfortable as he could for a long stay, had blocked the wheels of the wagon so as to prevent its motion, and left the horse and wagon to take care of themselves, and was intending to wait there a very considerable time. All this appears to me to be very strong evidence tending to show that he was not then travelling upon the highway ; and the referee having found so, in accordance with this evidence, I can see no ground for disturbing his conclusion.

SMITH, J., concurred.

*Judgment on the report for the defendant.*