Hillsborough, }
  June, 1896. }

### PETITION OF THE MILFORD & MANCHESTER RAILROAD.

Whether the public good requires the proposed railroad, is a fact to be found by referees, to whom a petition for a decision of that question is referred.

MOTION TO RECOMMIT. The petition of the plaintiffs, a provisional corporation, was referred to referees, who have filed a report. Counsel opposing the petition move a recommittal of the report for an additional finding.

*Frank S. Streeter, Oliver E. Branch, Charles H. Burns,* and *Bingham & Mitchell,* for the motion.

*David A. Taggart, Isaac W. Smith,* and *Harry T. Lord,* opposed.

PARSONS, J. The plaintiffs' petition is brought under *s.* 8, *c.* 156, P. S., " for a decision of the question whether the public good requires the proposed railroad." The referees, whose report the defendants now ask to have recommitted for a finding " whether the public good requires the proposed railroad," were directed by their commission " to find and report the facts bearing upon the petition." P. S., *c.* 156, *s.* 10. Their report omits to find upon several questions litigated before them, including that upon which a finding is now asked.

It is conceded that the question of public good is a question of fact bearing upon the petition, *i. e.,* material, if not controlling, upon the judicial question whether the plaintiffs or defendants are entitled to judgment.

The plaintiffs oppose the motion upon the ground that c. 156, P. S., authorizes and requires the referees to find and report, not facts bearing upon the petition, but facts bearing as evidence upon the question of public good, and requires the court, as triers of fact, upon the evidentiary facts reported by the referees, to find the fact of public exigency. In the absence of evidence to the contrary in the express terms, general language, or tenor of the whole chapter, the legislature, in authorizing the reference of the petition to referees, must be presumed to have intended, and to have understood by the term referee, a tribunal with powers and duties usual under New Hampshire law. No confusion or uncertainty as to the powers and duties of referees exists. The extent of their duty and the limitations upon their powers are not only well known and understood, but are clearly defined by statute. P. S., c. 227, ss. 9–11.

" Referees shall proceed in all cases, unless the parties otherwise agree, according to the rules of law or of equity, as the case may be, and according to the practice in court, and shall report their decision as soon as may be to the court. If either party shall request it, they shall state specifically all matters of fact found by them to have been proved, and their rulings upon all questions of law." Ib., s. 10.

" Reports of referees may be recommitted to the same or other referee or referees, or such judgment may be rendered thereon as the law and facts require." Ib., s. 11.

" The court shall allow a reasonable compensation to referees for their services and expenses, which shall be paid by the county." Ib., s. 13.

This statute, being a general enactment of the law upon the subject of referees " in all cases," the legislature understood would govern the powers and duties of the referees authorized by c. 156, unless exception were made. With this understanding, if no special limitation upon the powers of the referees was intended, precise language, expressing and defining the power and duty of the court and the referees and their relation to each other, was unnecessary, because fully covered by the general enactment. For the same reason, no provision was required for the payment of the referees' fees, for whose compensation, unless authorized by general law, no method is provided.

It is not claimed that the court should find any fact but that of public exigency. The legislature might have provided, if such had been its intention, that the referees should find all the facts but one, and as to this fact should find evidence. If such had been intended, the proposed procedure would have been a limitation upon the usual power of referees and a departure from ordinary practice. The facts to be found by the referees and the fact upon which they were to find evidence merely would have been

clearly distinguished, and the modification of the usual practice before referees plainly defined. The absence of any provisions in express terms limiting the action of the referees and marking the new line of limitation between the duties of the referees and the court, is evidence that no change was intended. In the present, as in all other cases, it was, therefore, the duty of the referees, if requested, to "state specifically all matters of fact found by them to have been proved," the court having power to examine and revise the rulings of the referees upon questions of law, and, if justice requires, to order a recommittal of their report to the same or to other referees, and to render such judgment on the report as the law and the facts require. P. S., c. 227, ss. 9–11.

Chapter 156, P. S., taken as a whole, and in comparison with c. 100, Laws 1883, of which it is a revision, furnishes evidence not in conflict with, but in support of, this conclusion.

The material provisions are as follows:

"Sect. 8. The provisional corporation may file in the office of the clerk of the supreme court . . . a petition to the court for a decision of the question whether the public good requires the proposed railroad.

"Sect. 10. . . . The court shall refer the petition to the board of railroad commissioners or to a board of three referees appointed by the court, as they shall deem best, to find and report the facts bearing upon the petition.

"Sect. 12. The board . . . shall make report of their doings and findings to the regular or adjourned law term of the court.

"Sect. 13. The court shall thereupon . . . decide the questions raised by the petition.

"Sect. 14. If they decide that the public good requires the proposed railroad, the secretary of state, upon receipt of a copy of such decision, shall issue to the corporation a certificate . . . "

Chapter 100, Laws 1883, is the original statute providing for the organization of railroad corporations under general law. That the legislature had the original statute in view in adopting the chapter under consideration, which is part of a general compilation and revision of the entire statute law of the state, is obvious. That the chapter was before the draftsman who penned the corresponding paragraphs of the present law, is equally certain. Hence that statute is evidence competent to be considered upon the question of legislative intention, and of the meaning which was attached to the language used.

Omitting a different procedure as to preliminary corporate organization, not material to the present inquiry, the law of 1883 provided (s. 7) for an application by petition "to the supreme court . . . to determine whether the public good requires the laying out and construction of such railroad. . . . Said court

. . . may refer said petition to the railroad commissioners or to three referees to be appointed by it."

"Sect. 8. Such commissioners or referees shall report to the court whether, in their opinion, the public good requires the laying out, construction, and operation of such railroad . . . and shall locate the same.

"Sect. 9. . . . Said court may render judgment on said report, or make such order therein as justice may require; and the location of the route of said railroad, as fixed by the decision of said court, shall be recorded by the secretary of state.

"Sect. 10. If said court shall render judgment laying out said railroad, the directors may apply to the railroad commissioners to assess the damages to landholders." Laws 1883, c. 100, ss. 7–10.

That referees appointed under the law of 1883 were required to find and report upon the question of public good, is not open to question. Neither can there be any pretence that under that law the legislature, disregarding well understood rules of practice and definite statutory provisions, created a board of referees to find and report evidence. Its provisions strengthen the presumption that, if the legislature in 1891 had intended to qualify the official character and duty of the tribunal previously exercising the same jurisdiction, that intention would have been clearly expressed. There is no substantial difference between "a petition for a decision of the question" and "a petition to determine the question." Each asks for an adjudication. There is, however, a substantial change in the power of the court over the petition. Section 10, chapter 156, provides that "the court *shall* refer the petition to the railroad commissioners or to a board of three referees," while the law of 1883 provided that the court *may* refer the petition. Laws 1883, c. 100, s. 7; Comm'rs' Rep. P. S., c. 155, s. 10, marginal letter m. This is a limitation upon the discretionary power of the court under the original statute, and under c. 227, P. S., where the propriety of the reference of "any cause at law or in equity, or the determination of any question of fact pending in court," not of right triable by jury, is left open. This provision does not affect the referees, but limits the power of the court. The court must refer the petition. Therefore, s. 8, c. 204, P. S., "Causes which the court have authority to refer shall, as far as practicable, be tried by one or more justices of the court, unless one of the parties objects," has no application. The change is evidence that the legislature did not intend that questions of fact raised by the petition should be determined by the court. An express provision commanding the reference of the petition to a tribunal known as triers of fact, cannot be given any meaning except that the questions of fact raised by the petition shall be determined by such tribunal, and by none other. Another change

in phraseology is, that, while by the original statute the referees are required to report to the court their opinion, *i. e.*, their finding, whether the public good requires the proposed railroad, by the revision, they are "to find and report the facts bearing upon the petition." The only difference between the two expressions is, that by the former the referees were required to report one fact bearing upon the petition, while by the latter they are required to report the facts, *i. e.*, all the facts. The change in the law is one of extension, and not of limitation. An intention to excuse the referees from finding a single fact heretofore specifically required to be reported by a previous law, cannot be inferred from the substitution of a provision requiring all the facts to be found and reported. Nor is it so clear that the question of fact, whether the public good requires the proposed railroad, is the only fact that can legally bear upon the plaintiffs' right to maintain the petition, or which the legislature must have understood might affect that right, that the use of the word "facts" in the plural, instead of "fact" in the singular number, can establish that by facts evidence was meant. Though in most cases the finding of the fact of public good must be, perhaps, decisive upon the judicial question, whether the plaintiffs should have judgment on the report, it is manifest cases may arise in which other facts would require the dismissal of the petition, despite a favorable report upon the question usually decisive. The case of rival associations with conflicting petitions, each seeking to build substantially the same road; a finding of fact that the petition is illusory within the meaning of the doctrine in *Dow* v. *Railroad*, 67 N. H. 1, and *Sinclair* v. *Railroad*, Hillsborough, September 27, 1888, *Doe*, C. J.; or a finding of a recent adjudication against the plaintiff, without proof of material change (*Winnipiseogee Lake Co.* v. *Laconia*, *ante*, p. 284; *Whitcher* v. *Landaff*, 48 N. H. 153, 155), would present substantive facts bearing upon the petition material for the consideration of the court. It is unnecessary to determine now what the legal effect of such findings would be, as the only purpose of the present discussion is to show that the legislature must have understood there might be such questions. That such questions may arise is already established by the present case, in which the defendants' motion to dismiss on the ground of prior adjudication by the legislature was denied in part upon the ground that whether the plaintiffs had so acted as to preclude them from maintaining the petition was a fact bearing upon the petition, to be determined by the referees. *Petition of the M. & M. Railroad*, *ante*, p. 347. Since the filing of the report, the same motion has been renewed upon two grounds alleged to be found as facts, illusiveness and prior adjudication.

If the foregoing were open to question, there remains a conclusive answer to the plaintiffs' claim, that the words "facts

bearing upon the petition," should be read " facts bearing, i. e., material as evidence, upon the question whether the public good requires the proposed railroad." For no reason is assigned, and no sound reason can be found, why, if the legislature intended what the plaintiffs claim it meant, the language they suggest, or words of similar import, were not used. Without a sound reason, we are not at liberty to give to the language used other than its plain and ordinary meaning. The language of the original law furnishes additional evidence against the construction claimed. The legislature might have intended to change the law requiring the referees to report whether the public good required the proposed railroad, so as to require them to report facts bearing upon the question of public good. If such had been the intention, with the original law before them, no possible difficulty could have been found in clearly and plainly expressing that intention. If a change had been intended, such language would have been used. The plaintiffs' argument based upon ss. 13, 14, c. 156, as to proceedings in court upon a return of the report, is also unfounded. The claim is that, however clear it may be, from the words of s. 10 standing alone, that the legislature, in providing for the reference of the petition to a tribunal whose special duty is to find facts and in instructing them to find and report the facts bearing upon the petition, intended that the referees should pass upon all the material facts, yet the language used cannot be given that construction when the remaining provisions of the chapter are taken into consideration. But s. 13 contains nothing which, without violence to the ordinary meaning of language, can be construed to require a strained interpretation of s. 10. The legislature having required the reference of a petition raising a question of fact to a tribunal universally understood to be triers of fact, and having specially required them to find and report the facts, the further requirement that the court decide the questions raised by the petition would not, without more, relieve the referees from the determination of any material question of fact or impose upon the court the decision of any questions except such as in the every-day practice upon referees' reports would arise under similar circumstances.

The plaintiffs' argument is based mainly, if not entirely, upon the first section of s. 14. It is that "they," in the phrase "If they decide that the public good," etc., means the court; hence, it is argued that the questions raised by the petition are to be decided, i. e., determined, found as facts by the court, and therefore the referees must not find the fact; that these words, in defiance of the general statute (c. 227, P. S.) and well known and understood rules of practice and the express language of s. 10, must be construed to limit the referees to the finding of evi-

dentiary facts from which the main fact bearing on the petition may be found. The claim is, in short, that a direction to find the facts means all the facts but the main fact. Such a construction would be a substantial repeal of the law as enacted, and the re-enactment of a substitute drafted by the plaintiffs. Section 14 imposes no duty upon the court or referees. It relates solely to the duty of the secretary of state in case the petition is sustained. The phraseology used is merely descriptive of previous action; and if an inaccuracy existed in the description of the previous proceedings, the only question would be, whether the contingency upon which the secretary of state was empowered to act was indicated with sufficient clearness to justify his action, and prevent a failure of the whole law. Upon no principle of construction could such defective description of preceding action operate to repeal previous express provisions, and to substitute others agreeing more nearly with the descriptive references. But there is no inaccuracy. The phrase, " If they [the court] decide the public good requires the proposed railroad," does not mean " If they find as a fact," etc., nor does it mean, "If the referees find as a fact." The plaintiffs bring their petition under s. 8 " for a decision of the question," etc. The object of the petition is to obtain a judicial decision, a judgment or decree conclusively establishing the public need of the proposed railroad. Facts are not established by the findings of referees, judges acting as triers of fact, or by the verdict of a jury, but by a judgment on the report, finding, or verdict. *Clough* v. *Moore*, 63 N. H. 111, 113. The court in each case alike must decide, *i. e.*, adjudge, whether the facts are lawfully and properly found, and all other questions raised by the petition or other form of proceeding. "If they render judgment" may be a more technical, as well as more cumbersome, mode of expression, but does not so differ in meaning from " if they decide " as to lead to the inference that the legislature intended by the expression used to repeal the express language of *s*. 10. By Webster, "to decide" is defined, "to render judgment." Internat. Dict. A " decision " is " a judgment of a court." Rap. & Law. Law Dict. In the section of the original law imposing like duties upon the secretary of state, the order of judgment upon the report of referees who were empowered to locate the road is spoken of as the " decision of the court fixing the route of the railroad " and as " a judgment laying out said railroad." Laws 1883, *c*. 100, *ss*. 7, 10. It is not claimed that under that statute the members of the court personally fixed the route, or laid out the railroad. The use of similar language in *s*. 14, *c*. 156, P. S., evidently from following the phraseology used in 1883, could not have been intended to operate as a repeal of previous express provisions touching the duty of referees, and to impose upon the court a duty not imposed by like expressions in the original act.

It cannot reasonably be claimed that the legislature intended to provide, as the machinery for the investigation and correct determination of an important question of fact depending upon so many and diverse facts and circumstances, that one set of men should view the country where the road was to be built and the territory it aimed to serve, hear the testimony of witnesses and other evidence, and then report in writing, as well as they can, what they have seen and what isolated facts they find proved, to another body of men who are to be kept in entire ignorance of the impression as to the main question to be determined which was made on the minds of the investigators by the mass of testimony, visual, oral, and written, laid before them; and that the second body should then determine the main question from what the first body tells them they have seen and heard. Nothing short of express language, so express and precise as not to be capable of any other interpretation, can authorize us to hold the legislature intended so anomalous, cumbersome, and fallible procedure. In the absence of such language, we are bound to understand the legislature intended a workable law, a method reasonably certain of obtaining a correct decision.

*The report is recommitted to the referees to report whether the public good requires the proposed railroad.*

CLARK, CHASE, and WALLACE, JJ., did not sit: the others concurred.