Grafton,  }
Feb. 6, 1906. }

## BATH v. HAVERHILL.

The location of a disputed boundary line between towns is not finally deter-
mined by the report of a committee appointed under section 5, chapter 52,
Public Statutes, nor by a ruling of the trial court thereon, but by a judg-
ment rendered after consideration of the questions of law and fact pre-
sented by the findings.

The supreme court has authority to review questions of law presented by the
findings of a committee to establish the boundary line between towns and
by the rulings of the superior court thereon.

It is the duty of a committee appointed to examine a disputed boundary
between towns to determine as a fact the location of the line and mark
it upon the ground; and in the absence of legal error such findings are
conclusive.

A line which has been located and established, and treated for more than
sixty years as the correct boundary between towns, must be regarded as the
true jurisdictional boundary, although it may differ from the calls of the
charter.

PETITION, under section 6, chapter 52, Public Statutes, to deter-
mine the location upon a bridge over the Ammonoosuc river of
the boundary between the two towns. The petition was referred
to the county commissioners, who found that a line through the
center of the middle pier of the bridge had been recognized by
both towns for more than sixty years as the boundary line. Upon
this finding they made the further finding that such line was the
boundary line between the towns at that point, and reported the
marking of the line upon the bridge by them.

The report having been recommitted upon motion of the plain-
tiffs, the commissioners made a further report, in substance as
follows: In 1822, the town of Haverhill laid out a road to Stack
rock, on which the middle pier of the bridge in question stands.
Between 1822 and 1829, the two towns joined in building the
bridge, each paying one half of the expense; and from that time
until 1894, when this controversy arose, the town of Bath sup-
ported and maintained the bridge up to the center of the middle
pier. In 1887, necessary repairs upon the pier were made by the
town of Haverhill, Bath paying half of the expense. In 1894,
Bath made a survey and marked the charter line upon the bridge,
about seventy feet from the center of the pier toward the Bath
side. There was no evidence that any line was ever marked on
the ground until one Gile marked what he claimed to be the char-
ter line in 1894, except that the pier was mentioned in perambu-
lations and surveys as being on the line. The line, if run through

the pier on a straight course, would strike some distance south of the recognized corner of the towns of Bath, Haverhill, Newbury, and Ryegate; and this corner has always been recognized as the corner of Bath and Haverhill. Bath laid its highway only to the north bank of the Ammonoosuc river. Various surveys and perambulations considered by the commissioners in making their finding were returned with the report.

The plaintiffs moved that the report be rejected so far as it varied from the charter line, and that the charter line as reported by the commissioners be established as the boundary line. To the granting of this motion and a decree in accordance therewith the defendants excepted. Transferred from the September term, 1905, of the superior court by *Stone*, J.

*Smith & Smith* and *Batchellor & Mitchell*, for the plaintiffs.

*Samuel B. Page* and *Scott Sloane*, for the defendants.

PARSONS, C. J. "When the selectmen of adjoining towns shall disagree in renewing and establishing the lines and bounds of such towns, the supreme court for the county, . . . upon petition and after notice, . . . shall, by themselves or by a committee appointed for that purpose, examine said disputed lines, and their decision thereon shall be final." P. S., *c.* 52, *s.* 6. The purpose of a proceeding under this section is to determine the location upon the ground at the point in dispute, of the line which is as matter of law the boundary between the towns. *Chatham's Petition*, 18 N. H. 227; *Pitman* v. *Albany*, 34 N. H. 577; *Greenville* v. *Mason*, 57 N. H. 385, 392. The location of this point upon the ground is a question of fact. "Facts are not established by the findings of referees, judges acting as triers of fact, or by the verdict of a jury, but by a judgment on the report, finding, or verdict." What judgment shall be rendered upon the facts found, is a question of law. *Petition M. & M. R. R.*, 68 N. H. 570, 576. A judicial decree establishing the fact is the object of the petition, and it is this decision which the statute declares shall be final— not the finding of the committee, or the ruling of the trial court. Prior to the Revised Statutes, the decision of the court had only the effect of an agreement between the selectmen as to the location of the line. R. S., *c.* 37, *s.* 6; Act of June 26, 1827, *s.* 3 (Laws, *ed.* 1830, *p.* 446). The purpose of the change was to make the adjudication final and conclusive upon all parties, as a proceeding *in rem*. *Pitman* v. *Albany*, 34 N. H. 577, 581–584. The rendition of such a judgment requires the determination both of questions of fact and of law. When the Public Statutes were adopted, the term "supreme court" included both the court which

at the trial term determined questions of fact and the court which at the law term settled questions of law. The suggestion that the provision making the decision of that court final precluded the examination by the whole court of questions of law involved in the judgment, is entirely without support. This court has the same power over questions of law involved in the adjudications of the superior court, and properly transferred to it, that the whole court had prior to 1901 at the law terms, over questions of law raised and reserved at the trial terms. Laws 1901, c. 78, ss. 2, 5.

It was the duty of the commissioners, to whom, as the committee mentioned in the statute, the petition was sent, not only to determine the location of the line, but to mark it upon the ground. *Chatham's Petition*, 18 N. H. 227, 229. The committee having done so, upon the return of the report a motion for judgment thereon would raise the question whether there was legal error in their proceedings. As their findings of fact upon competent evidence are conclusive, in the absence of legal error such motion must be granted, and the line established as found and marked by them. *Towne* v. *Davis*, 66 N. H. 396; *Cummings* v. *Center Harbor*, 57 N. H. 17. If their conclusion involves error of law, the report might be rejected on motion (*Boscawen* v. *Canterbury*, 23 N. H. 188); or if sufficient facts appear in the report to show the location of the legal boundary at the point in dispute, a decree establishing such line might be made upon the report as it stands. *Morse* v. *Pitman*, 64 N. H. 11.

The case contains no motion for judgment in favor of the defendants upon the report, but is here upon exception to a decree rejecting upon motion of the plaintiffs the conclusion of the triers of fact, and establishing as the true line what is called the "charter line." Assuming that by the "charter line" is meant a line run as nearly as can now be done in accordance with the calls of the charter, a fatal objection to the decree is the fact that the location of such a line at the point in dispute has not been determined. The report states the claim of the plaintiffs and their surveyor on the point, but does not decide it. By the charter of Bath, which is made a part of the case, the charter line commences at a bound at the mouth of the Ammonoosuc river and runs thence up the Connecticut river to a bound described, thence easterly, southerly, and westerly on named courses of about six miles each in length, to the bound begun at. The point in dispute is situate on the last line, approximately near the point found to have been always recognized as the corner from which the description starts. The point in dispute is therefore practically eighteen miles from the starting point; and that different surveyors would now run this line without a variation of as much as seventy feet (the distance

in dispute) cannot be held as matter of law. It may be inferred from the report to have been conceded that, starting from the recognized corner and reversing the charter course, the line would cross the bridge substantially as the plaintiffs claim; but this fact would be evidence merely—not necessarily decisive—upon the question where a line run on the calls of the charter would cross the bridge. As no facts have been found sufficient in any view of the law to authorize the decree which was made, the exception thereto must be sustained and the decree set aside.

The material question between the parties, however, is whether there was legal error in the conclusion of the commissioners that the boundary between the towns was at the center pier where they have marked the line. When a line has been located and established, and treated for more than fifty years as the correct line between the towns, such line must be regarded as the true jurisdictional line between them, although it may differ from the calls of the charter. *Hanson* v. *Russel*, 28 N. H. 111. "Its actual *situs* upon the ground might be determined by a practical location long established and acquiesced in, . . . even if such line were variant from that described in the act of incorporation." *Heywood* v. *Lumber Co.*, 70 N. H. 24, 29. Whether there had been such practical location, long established and acquiesced in, at any point on the bridge, was a question of fact upon which there was evidence before the committee. From 1829 to 1894, the town of Bath maintained the bridge to the center of the middle pier. Bath paid one half of the expense of building the bridge, and, in 1887, one half of the expense of repairing the pier; and in a perambulation made in 1875, the pier is mentioned as a monument through which the boundary line runs. It also appeared from a perambulation in 1840, that the recognized line on the ground was not a straight line, as called for by the charter. From this evidence it could be found that there was a practical location of the boundary line differing from the calls of the charter, long recognized and acquiesced in, and that the line adopted and recognized passed through the center pier at the point where the commissioners marked it. These facts are evidence from which the fact as to the true location of the line might be found as the committee have found it. It is immaterial that there was evidence tending to an opposite conclusion. There has been no suggestion that the report should be set aside as against the weight of the evidence. *Drown* v. *Hamilton*, 68 N. H. 23. The exceptions are sustained.

*Decree set aside: judgment on the report for the defendants.*

All concurred.