Merrimack, }
March 5, 1912. }

### CROWLEY *v.* CROWLEY.

Where a cause is remanded to the superior court for further hearing upon certain material issues, a master appointed to find the facts in accordance with an opinion of the supreme court is not restricted to the trial of facts not included in the former case, when neither the order of reference nor the decision on which it is based provide for such a limitation.

In such case, the evidentiary facts found at the first trial are not conclusive upon the second hearing, but may be modified or falsified by the master, if deemed erroneous; and the evidence which may be adduced upon the resubmitted issues is limited only by the general rules of competency.

Where two trials of a cause have proceeded upon the theory that the questions of laches and statutory limitation were involved, the objection that those defences are not formally presented by the pleadings is to be regarded as waived.

BILL IN EQUITY, to establish the plaintiff's title to a certain farm by means of a resulting trust. This is the same case that is reported in 72 N. H. 241. After a further hearing before a master on certain facts or issues, the superior court ordered the bill dismissed, and the plaintiff excepted. Transferred from the April term, 1911, of the superior court by *Pike*, J.

*Hollis & Murchie* (*Mr. Hollis* orally), for the plaintiff.

*Dudley & Lowe* (*Mr. Dudley* orally), for the defendant.

WALKER, J. The issue between the parties relates to the title to the farm, the plaintiff claiming that he is the equitable owner of it in consequence of a resulting trust, and the defendant that she has the legal title unincumbered by any trust in favor of the plaintiff, by virtue of the will of the plaintiff's father, to whom it was conveyed in 1864. Upon the first trial of the case, the court made certain findings of fact and ruled that they "constituted in law a resulting trust and ordered a decree in favor of the plaintiff," subject, however, to the further order that if they "do not constitute a resulting trust, the defendant is entitled to judgment." The case was then transferred to this court, and it was held (*Crowley v. Crowley*, 72 N. H. 241) that the facts reported did not constitute in law a resulting trust, and that, "according to the provisions of the case, the defendant should have judgment." But it was said:

"Justice seems to require that the plaintiff should have a further hearing if he desires it; and to afford him an opportunity to apply for such hearing, the order made here is, *case discharged.*"

Subsequently, the plaintiff applied to the superior court for a further hearing which was granted; and as the justice who tried the original case had died, the court appointed a master "to find the facts in accordance with the opinion of the supreme court." The master reported that at the time of the original conveyance to John, the plaintiff's father, in 1864, a resulting trust in the premises arose in favor of the plaintiff; but that his father disavowed the trust in 1875, with the knowledge of the plaintiff, and continued his occupation of the premises for more than twenty years before the bringing of this suit, claiming to be the owner thereof, and that the plaintiff's right to the farm is barred by laches and the statute of limitations. The superior court ordered the bill dismissed, and the plaintiff excepted upon the ground that the finding of the disavowal is inconsistent with an evidentiary fact found in the original case. In support of this position, it is insisted that the master could not consider evidence tending to disprove any of the facts before reported, but that he was bound to assume that they were true and to hear and consider only evidence tending to prove other facts not inconsistent with the facts already reported. If it is assumed that there is such an inconsistency in the findings, the question whether the plaintiff's contention is sound depends upon a consideration of the extent of the reference to the master, as indicated in the opinion upon the former transfer of the case. The plaintiff took no exception to the reference to the master "to find the facts in accordance with the opinion of the supreme court." He' might have requested the superior court to limit the scope of the hearing before the master to the finding of additional facts not included in the former case, or he might have asked for a rehearing in this court; but as he made no such requests, he is presumed to have assented to a trial of such facts before the master as from the opinion on the former transfer seemed to be just and equitable. It seems plain that it would not be just to permit the plaintiff to introduce evidence in support of the original findings that were favorable to him and to preclude the defendant from offering evidence in contradiction thereof. The reference was not made upon the theory of allowing the plaintiff to introduce such evidence as he might choose and of excluding all evidence offered by the defendant.

Nor did the opinion intimate that the hearing should be limited

to drawing inferences from the facts then before the court, without the aid of further evidence. If the facts were sufficient to authorize the drawing of the necessary inferences to support a judgment for the plaintiff, it was not suggested in the opinion that the hearing should be so limited. The court plainly contemplated a further hearing upon such evidence as might be competent, and such was the procedure adopted by the master. But it is equally clear that there was no requirement or suggestion that the evidentiary facts found at the first trial, bearing on the specific issues submitted to the master, should not be modified or even falsified by the master, or that no evidence should be received tending to that result. Nor is there any rule of law by which they became *res adjudicata. Clough* v. *Moore,* 63 N. H. 111.

The court granted the plaintiff the favor of "a further hearing if he desires it," because it did not seem that there had been a full hearing, The plaintiff submitted to the master certain requests for findings, the most of which were made in his favor, and which established the fact that he had, at the time of the conveyance to John, a resulting trust in the land. But he also asked for a finding that there was no disavowal of the trust before 1900, so that he would not be barred by the statute of limitations or by laches. This request was based upon the following statement in the opinion: "If there was a resulting trust in this case, the questions whether John recognized the plaintiff's rights at the outset,—if so, whether he subsequently changed his position and disavowed the trust,— if so, when the change was made,—and whether the plaintiff knew of it, or under the circumstances ought to have learned of it,—are all questions of fact that cannot be determined in this court. It is sufficient to say that the facts reported do not conclusively show that the plaintiff's remedy would be barred, if he originally had one." In other words, the court was unable to say as a matter of law whether the plaintiff's right as the *cestui que trust* was or was not barred by the statute of limitations. One important fact to be found was the time when John disavowed the trust, if there was a disavowal. The court did not understand that it had been determined that there was no disavowal before 1900, as the plaintiff seems to assume; if it had, it would not have treated that question as an open one, to be determined by a further hearing upon the application of the plaintiff. Whether there was a disavowal of the trust by the trustee under a claim of ownership in himself, and if so, when it occurred, was an issue to be tried; the position

of the defendant was that it occurred in 1875, while the plaintiff insisted it was not made until 1900. Upon this question the plaintiff claims that as it was found in the original case that John "never claimed to the plaintiff that he owned them [the premises] until some time in 1900," the master was precluded from finding, or receiving evidence, that the plaintiff before June, 1875, "asked his father and mother . . . for a deed or a mortgage of the farm because of his payment therefor, and they declined to give it to him," and that "the father and mother both assured the plaintiff they would pay back to him every cent he had paid toward the place." From this evidence, the master found the fact of the disavowal, and that it constituted notice to the plaintiff that his father denied his ownership of the farm.

If, as is claimed, these two findings are inconsistent, it does not appear that the master was not authorized to find as he did, or that the court must reject his finding as unauthorized. As already shown, neither the language of the reference, nor the language of the opinion upon which the reference was based, provides for any such limitation. Nor do the circumstances of the case, the object the court had in view, or the mode of procedure suggested furnish ground for the implication that such a limitation was intended. The plaintiff's reasoning would lead to the absurdity that when the court recommits a report to find a specific fact upon further evidence, no hearing can be had or evidence admitted if it appears that the fact was found in the original report, even though justice requires a further hearing and a reopening of the case to that extent. As the first report would not be competent evidence in proof of the facts contained in it (*Hunter* v. *Carroll*, 67 N. H. 262, 264), the referee or master upon this theory could at most only receive evidence supporting the original finding, notwithstanding counsel might offer conclusive proof that it was erroneous. If in this case the defendant's evidence conclusively proved that the plaintiff now admits that John claimed in 1875 to be the absolute owner of the premises, it could not be received against the plaintiff's objection, if this reasoning is sound. Or suppose the court had said there ought to be a further trial of the question whether in 1864 Goss conveyed the farm to John, and there was a reference of that question upon the request of the plaintiff, could not that fact found at the first hearing be contradicted at the second; or rather, would it not be fair to infer that the court meant what it said? The purpose of the court in withholding the order for judgment against

the plaintiff, and permitting the case to be reopened for the retrial of certain material issues, was to promote and not to defeat justice. The court in effect granted a new trial upon certain points or issues and did not attempt to limit the general rule as to the admissibility of the competent evidence that might be offered by the parties.

Upon the submission of the issue of a disavowal of the trust to the master, it would ordinarily be understood that all competent evidence upon that issue would be received. It might be proved by John's claim of ownership expressed directly to the plaintiff, or indirectly by similar claims made to others, which the plaintiff knew of or ought to have known of, or by both these modes of proof combined. But it is insisted that the opinion of the court only authorized the master to consider the indirect proof, because the fact appeared in the former case that John never claimed to the plaintiff to be the owner of the farm until 1900. The language of the court, adopted by the plaintiff in his requests, is thus interpreted to mean, not what it says, "a disavowal" without limitation, but an indirect disavowal or a disavowal provable only by claims of ownership made to people other than the plaintiff; in other words, the effect given to the language is that the court intended to submit to the master, not the whole issue, but only a certain part of it. Such a purpose could have been expressed in language admitting of no doubt: if the court meant that only an indirect claim of ownership by John was to be tried by the master, language would undoubtedly have been employed to express that intent without the aid of ingenious implication; and the fact that it is not so expressed leads to the conclusion that no such intent was entertained. *Petition M. & M. R. R.*, 68 N. H. 570, 572. While it is true, as the plaintiff argues, that all the findings were not reopened or set aside and a new trial granted of the whole case, it is equally true that such facts or issues as were specified by the court were intended to be reheard, if the plaintiff saw fit to apply for a further hearing; and the specification of a certain fact or issue was not a limitation of the evidence to be adduced by any rule except the general rule of competency. The opportunity for a new trial of specified issues, granted to the plaintiff upon equitable grounds, was not designed to afford him an opportunity to enforce a narrow and inequitable rule by which competent and material evidence offered by the defendant would be excluded. Justice seemed to the court to require that the whole

issue of disavowal should be tried. *Raynes* v. *Raynes,* 55 N. H. 514.

The further argument is made that the defence of the statute of limitations and laches cannot be interposed because the pleadings in the case do not raise those questions. But however that may be as a question of procedure, the objection comes too late. If it has any merit, the plaintiff has waived it, or is bound by the opinion in the original case, where it was expressly held that "the case then resembles an express trust of a continuing nature, and is subject to the statute of limitations in like manner." Both trials having proceeded on the theory that the questions of laches and the statute of limitations were involved, those defences cannot now be rejected as a mere matter of pleading.

*Exception overruled.*

All concurred.