March 7,
1916.

GOVERNOR AND COUNCIL *v.* CHARLES H. MOREY & a.

The provision of P. S., *c.* 222, *s.* 13, as to ordering notice to be given of petitions, applications, etc., is a general provision relating to all applications to the court and governs the procedure upon applications subsequently authorized by the legislature though as to such applications no special rule of procedure has been prescribed.

In condemnation proceedings under Laws 1911, *c.* 130, for the acquisition by the state of the Crawford Notch, adversary proceedings began with the filing of the state's petition to the supreme court for the appointment of commissioners to assess damages.

In such proceedings due process of law merely requires that such notice be given to all parties interested pursuant to P. S., *c.* 222, *s.* 13, as if responded to will give them reasonable opportunity to appear at the hearing before the commissioners; and the publication of the petition and order is notice to every one claiming an interest in the land described in the petition, and those who do not appear in response thereto are not entitled to any further notice as to the hearings before the commissioners.

The provision of Laws 1911, *c.* 130, *s.* 2, that the commissioners shall give "reasonable notice to all parties interested" means all parties who have appeared in court in response to the order of notice.

PETITION, by the governor and council on behalf of the state, alleging that in the year 1911, proceeding under the provisions of the

act providing for the acquisition of Crawford Notch by the state (Laws.1911, c. 130), the then governor and council caused a survey of the *locus* to be made and filed in the office of the secretary of state, and applied to the court for the appointment of commissioners to assess the damage to the owners; that a commission was appointed, heard all parties known or understood to be interested in the premises, and filed an award with the secretary of state; that subsequently the Forest Products' Company, which had not theretofore appeared in the proceedings, moved for leave to appear in the superior court, where appeals were pending, which leave was granted upon the ground that the commission had not given the notice required by the statute; that the situation is such that other interested parties may hereafter make claim to the land taken, and that a final settlement of all claims against the state should be now effected.

The prayer is for the appointment of a commission, or the reappointment of the former one, in order that such notice may be given and hearing had that the rights of all claimants shall be determined.

Upon the earlier petition alluded to in the present one, notice to appear in this court in answer thereto was given to all parties interested, pursuant to an order of notice that "the attorney-general notify the owners and the mortgagee therein named, and all other persons interested therein, to appear, . . . by causing a certified copy of said petition and this order to be duly served upon each of said owners and mortgagee fourteen days at least before said first Tuesday of April, 1912, and by causing a certified copy of said petition and this order to be published once each week for three weeks in succession in the Independent Statesman . . . the last publication to be at least seven days before said first Tuesday of April 1912."

The commissioners thereafter appointed gave notice of their hearings to those who appeared in compliance with the order of court.

*James P. Tuttle,* attorney-general, and *Joseph S. Matthews,* assistant attorney-general (by brief and orally), for the state.

*Drew, Shurtleff, Morris & Oakes* and *Bernard Jacobs* (*Mr. Morris* orally), for the Barron Hotel Company and Abraham M. Stahl.

*Leslie P. Snow* (by brief and orally), for Morey and others.

*Allen Hollis* and *Alexander Murchie* (*Mr. Hollis* orally), for the Forest Products' Company.

PEASLEE, J.   The petitioners assume that the proceedings taken under the former application are defective, so that there is occasion for further action, in order that the state's rights and obligations may be fully determined.

The jurisdiction of the court to now take any action whatever in the matter has been brought in question.   It is argued that the appointment of the commission was a purely ministerial act, and that therefore the appointment of one commission exhausted all the power conferred upon the court by the special statute.   Laws 1911, *c.* 130.   It is not probable that the legislature intended to so limit the power of appointment.   If, after the first commissioners had been designated, they had died, or become disqualified, or had declined to act, there would have been power to name a new commission.   And so if it should prove that the proceedings of the commission were so irregular or defective that no final judgment or decree could be entered, a like power would exist.   The legislature intended to confer upon the court a power of appointment that would result in a final and binding adjudication of the matter in controversy.

Whether the regularity of the proceedings before the commissioners would be more appropriately considered upon a transfer of the case from the superior court, after a hearing upon an appeal from the commissioners, need not now be determined.   The present petition is based upon the theory that there may be rights of parties which are in no way affected by the earlier proceedings, including the appeals.   The question presented is whether there are rights wholly outside the cases now pending in the superior court.   If it is true that there are such rights, it follows that they cannot be adjudicated in any future steps in those proceedings.

One question to be considered is whether there has been a failure to give the notice required by the special act.   If there has been, other questions may become material.   If there has not been such failure, there is no occasion for further proceedings here.   The answer to this question involves a consideration of what the process is by which those claiming interests in these lands are made parties to the condemnation proceedings, so as to be bound by the judgments finally rendered therein.   On one hand it is claimed that the notice issued by this court upon the application of the state for the

appointment of commissioners is such process, and upon the other that it is the notice given by the commissioners.

The question whether due process of law requires notice of the application to appoint commissioners, has been argued. Upon this, the authorities are somewhat conflicting. The question usually arises upon the interpretation of a particular statute, it frequently involves matters of local practice, and much that has been said has no general application. In some jurisdictions it is held that the appointment of such a commission is a purely ministerial act and that no notice is necessary. In other states the view is taken that the proceeding partakes more of the nature of drawing a jury for a specific case, that preliminary questions may be raised and considered, and that notice is essential.

If it be assumed that the former view is correct, and that notice preceding the appointment is not essential to the protection of constitutional rights, the question here in issue is still undecided. Did the legislature intend that such notice should be given? Because the act contains no express provision upon the subject, it is argued that no notice is required. But the inquiry is not to be limited to a mere literal interpretation of the words used. If this were done, no commission could have been appointed at all. The act nowhere in terms confers upon the court power to appoint, nor does it say that the commission shall be so appointed. It merely provides that the state, acting through the governor and council, may apply for such appointment, and then goes on to prescribe the powers and duties of the commission. From this it is at once inferred that the commissioners are to be appointed by the court, and a part of that inference is that the proceeding is to be conducted according to the accepted practice in this jurisdiction.

"The court shall order notice to be given, in such manner as they think fit, of any petition, complaint, libel, application, or motion in writing filed therein, and no judgment or decree shall be rendered thereon without compliance with such order." P. S., *c.* 222, *s.* 13. With this provision in the general law, there was no occasion for the legislature to declare in the special act that notice of the application should be given. It was covered by the existing statute.

The statute being a general provision as to applications to the court, the legislature would naturally understand that it governed the procedure upon applications thereafter authorized, as to which no special rule of procedure was prescribed. *Petition of M. & M. R. R.,* 68 N. H. 570, 571.

The special act does not provide that a commission shall be appointed without notice. It does not even expressly provide for the appointment and remain silent upon the subject of notice. Everything is left to be carried out in accordance with the methods provided by the general statutory enactments upon the subject, or in accordance with the accepted practice. The act did not undertake to lay down details of procedure. For example, the appeal provision is entirely silent upon the subject of notice. But it cannot be doubted that the legislature understood that notice of appeals would be given.

If it be true that, upon the application of one party, the court could constitutionally make a selection of commissioners without notice to the adverse party, it is also true that no such procedure has been commonly followed in this state. The usual, if not the uniform practice has been to give notice in all such cases. It is not to be presumed that the legislature intended to disregard this just and reasonable method of procedure. The presumption is rather that it was understood that such procedure would be adopted, and that it was not so stated in the act because of the understanding that it was already sufficiently provided for.

It is argued that the power of appointment here conferred is like that to appoint the tax commission. Laws 1911, *c.* 169, *s.* 2. But the distinction is obvious. That power relates to the creation of a body having certain jurisdiction as to controversies which might arise in the future. No particular litigation and no specified parties are involved. The sole moving cause for the appointment is the legislative mandate. Here the situation is very different. The appointees are to try a specified piece of litigation. Its boundaries are well defined. The court has no power to act until moved by a party to that litigation, whose interests are adverse to those of other necessary parties. In appointing a tax commission the court acts without petition or application of any kind. It is not an adversary proceeding. The reasons which make notice advisable, if not constitutionally necessary, in the present case do not exist in that one. The situations are not analogous, and one does not furnish a precedent to be followed in the other.

Decisions touching the rights of landowners in highway appeals (*Carpenter's Petition*, 67 N. H. 574, and cases cited) have no application here. Those cases merely construe the peculiar provisions of the statute governing laying out highways. The statute relates to that subject only. It has no general application and is in no way referred to in the present act.

It is urged that due process of law requires notice of the hearing before the commissioners. Undoubtedly it requires a notice which, if responded to, will give the parties reasonable opportunity to appear at such hearing. All that is required is that, at a sufficiently early stage of the proceedings to protect all rights, a notice be given to all interested to appear at a time and place stated. Those who do so appear are thereafter entitled to be informed when and where further steps in the proceeding are to be taken. One who does not so appear becomes default and is not entitled to the notice thereafter given to those who have by their appearance indicated their wish to be heard. His failure to appear is a declaration on his part that he does not desire a hearing, and is binding upon him after it has been acted upon by the opposing party. Under what circumstances and upon what terms he may be relieved from the effect of such conduct, upon a motion to strike off the default and for leave to appear at a later stage of the proceedings, is a question not presented here.

In view of these considerations it seems probable that the legislature understood that adversary proceedings would begin with the filing of the state's petition in this court; that upon such petition notice would be given to all parties in interest to appear, and that their failure to so appear would put them in default so that they would not be entitled to notice of the time and place of hearing before the commissioners. The provision that the commissioners shall give "reasonable notice to all parties interested" means all parties who have appeared in court. It applies to the state as well as to those adversely interested. It is not in the nature of process to compel appearance on penalty of a default being entered. It is quite similar to the general provision that auditors appointed by the court shall give notice of the time and place of hearing (P. S., c. 227, s. 3) and was intended to serve a like purpose. If no notice had been given of the pendency of the original petition, the deficiency could not have been supplied by one given by the commissioners. Unless the parties notified only by the commissioners elected to appear, they would not be bound by the result.

There is no occasion for any further or other notice of the proceeding than that already given. The publication was notice to every one claiming an interest in the land described in the petition. Those who appeared in response to that notice were sufficiently informed concerning the future course of the litigation, and those who did not appear were not entitled to such information. From this it follows that the present application should be denied.

Questions concerning the standing of those who became default, and later asked leave to appear and take part in the proceedings in the superior court, upon the appeals from the awards of the commissioners, have been touched upon in argument. They are not involved in this proceeding and have not been considered.

*Petition dismissed.*

All concurred.